2:06cv79-mnt

AO 243 (Rev. 2/95)

**PETITION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| UNITED STATES DISTRICT COURT | District | MIDDLE DISTRICT OF ALABAMA |
|---|---|---|

| Name of Movant | Prisoner No. | Case No. |
|---|---|---|
| ADRIAN MOULTRY | 11383-002 | 2:03CR267-001-T |

| Place of Confinement |
|---|
| F.C.I. MARIANNA |

| UNITED STATES OF AMERICA | V. | ADRIAN MOULTRY |
|---|---|---|
| | | (name under which convicted) |

## MOTION

1. Name and location of court which entered the judgment of conviction under attack   UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF ALABAMA

2. Date of judgment of conviction   FEBRUARY 10, 2005

3. Length of sentence   192 MONTHS

4. Nature of offense involved (all counts)   (1) 21 U.S.C. §841(a)(1) & (b)(1)(b) Possess or Distribute a controlled substance. (2) 18 U.S.C. §922(g)(1) unlawful transport of firearms (3) 18 U.S.C. §924(c)(1)(A) Firearm/Possession/Drug Crime

5. What was your plea?  (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

   _____

   _____

   _____

6. If you pleaded not guilty, what kind of trial did you have?  (Check one)
   (a) Jury ☐
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐    No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☐    No ☒

(2)

AO 243 (Rev. 2/95)

9. If you did appeal, answer the following:

(a) Name of court _____ N/A _____

(b) Result _____ N/A _____

(c) Date of result _____ N/A _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?
Yes ☐      No ☒

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court _____ N/A _____

(2) Nature of proceeding _____ N/A _____

_____

(3) Grounds raised _____ N/A _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐      No ☒

(5) Result _____ N/A _____

(6) Date of result _____ N/A _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____ N/A _____

(2) Nature of proceeding _____ N/A _____

_____

(3) Grounds raised _____ N/A _____

_____

_____

_____

_____

AO 243 (Rev. 2/95)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐     No ☒

(5) Result _____ N/A _____

(6) Date of result _____ N/A

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.          Yes ☐     No ☒
(2) Second petition, etc.         Yes ☐     No ☒

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

In the instant case, .........counsel filed a late petition to the court on the defendant's behalf pursuant to his prior conviction. The counsel would not appeal the defendant's sentence where the district court violated the Petitioner's Sixth Amendment by not making a factual determination while applying the sentencing guidelines in a mandatory fashion. The Petitioner is not challenging the conviction, he is only challenging the sentence. He was prejudiced by his counsel's perfor- mance. There is a reasonable probability that but for counsel's unpro- fessional errors, the result of the proceedings would have been dif- ferent had she filed the Notice of Appeal as Petitioner requested her t

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.

Caution:     If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(4)

AO 243 (Rev. 2/95)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self—incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(h) Denial of right of appeal.

A.    Ground one:    INEFFECTIVE ASSISTANCE OF COUNSEL

Supporting FACTS (state *briefly* without citing cases or law)

COUNSEL FAILURE TO PROPERLY ADVISE THE PETITIONER OF THE SENTENCE HE COULD RECEIVE FALLS BELOW OBJECTIVE STANDARDS. AND FAILURE TO TIMELY FILE A MOTION UNDER 35(a) or RULE 29 THAT COULD HAVE SENTENCED THE DEFENDANT UNDER THE ADVISORY GUIDELINES. INSTEAD PETITIONER WAS SEN-TENCED UNDER MANDATORY GUIDELINES AND FAILURE TO MAKE A CONSTITUTIONAL OBJECTION UNDER THE 5th, 6th AND 14th AMENDMENT.

B.    Ground two:  THE USE OF PRIOR CONVICTION UNDER 924(E)

Supporting FACTS (state *briefly* without citing cases or law)   THE DISTRICT COURT MAY NOT DOUBLE COUNT A SENTENCE WHEN A PRIOR COURT JUDGED THAT A SINGLE SEN-TENCE ACCURATELY REFLECTED THE SEVERITY OF THE DEFENDANT'S CRIMES.

C.    Ground three: THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES UNDER §3553(a)

Supporting FACTS (state *briefly* without citing cases or law)   BECAUSE THE GUIDELINES ARE NOW MERELY ADVISORY, THE PETITIONER MAY ARGUE THAT THE APPLICABLE GUIDE-LINE SENTENCE IS GREATER THAN NECESSARY TO ACHIEVE THE PURPOSES OF THE SENTENCING REFORM ACT. THE IMPOSITION OF SENTENCES UNDER THE MANDATORY SENTENCING GUIDELINES WAS PLAIN ERROR.

AO 243 (Rev. 2/95)

D.    Ground four: _____

Supporting FACTS (state *briefly* without citing cases or law) _____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

N/A

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐        No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

(a) At preliminary hearing _____ SUSAN G. JAMES, P.O. BOX 198, 600 S. MCDONOUGH ST.,
_____ MONTGOMERY, AL., 36101-0198

(b) At arraignment and plea _____ SAME AS ABOVE

(c) At trial _____

(d) At sentencing _____ SAME AS ABOVE

AO 243 (Rev. 2/95)

(e) On appeal _____ N/A

(f) In any post—conviction proceeding _____ N/A

(g) On appeal from any adverse ruling in a post—conviction proceeding _____ N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐        No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐        No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____
_____ N/A

(b) Give date and length of the above sentence: _____ N/A

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐        No ☒

Wherefore, movant prays that the Court grant petitioner relief to which he or she may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on _____

_____
(Date)

_____
Signature of Movant

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

ADRIAN MOULTRY,          *
     PETITIONER,     *
                  *
                  *
                  *
    -vs-        *          CASE NO.: 2:03CR267-001-T
                  *
                  *
UNITED STATES OF AMERICA,  *
     RESPONDENT,     *

MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. §2255, 2255(6)(3)

COMES NOW, the Petitioner, Adrian Moultry, appearing pro se, pursuant to United States Supreme Court decision in Haines -vs- Kerner, 404 U.S. 519, 520 (1972; Hughes -vs- Rowe, 449 U.S. 5, 66 L.Ed. 2d 163, (1980); Estelle -vs- Gamble, 429 U.S. 97, 50 L.Ed. 2d 251 (1976); Sanders -vs- United States, 113 F.3d 184, 187 (11th Cir. 1997); Boag -vs- McDougall, 454 U.S. 364, 70 L.Ed 2d 551 (1982); Ferran -vs- Town of Nassau, 11 F.3d 21 (2nd Cir. 1996). The aformentioned cases ruling are consistent with the rulings made in the Eleventh Circuit Court of Appeals controlling case of Kilgo -vs- Ricks, 983 F.2d 189 (11th Cir. 1992), which held that the district court should not erect unneccessary procedural barriers, which a pro se litigant will have difficulty sur- mising unless the court is willing to guide the pro se litigant, or allow them to skip some of the less substantive obstacles.

Accordingly, the Petitioner moves this Honorable Court to review the following material facts and the memorandum of laws of the Constitutional and judicial and statutory laws and rules, and to exhibit the files and records of this case and/any hearing which in this matter, in support of this motion under §2255, §2255(6)(3) and 6A1.3.

## STATEMENT OF THE CASE

The Petitioner, Moultry was indicted on April 23, 2004 of count 1 Possession or Distribution of a controlled substance, count 2, Unlawful Transport of Firearms, count 3, Firearm Possession/Drug Crime. The Petitioner was adjudged guilty on each count of the indictment.

The sentence imposed is pursuant to the Sentencing Reform Act of 1984, including any amemdments effective subsequent to 1984, and the Sentencing Guidelines promulgated by the U.S. Sentencing commission. The Petitioner's base offense level was level 26, category 2 (70-87) months, with a 3 level reduction for accepting responsibility in a timely matter which resulted in a level 23, category 2 (51-71) months without enhancements.

## ARGUMENT
## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner Moultry contends that he is entitled to effective assistance of counsel at all stages of representation, including at sentencing. Scott -vs- Illinois, 440 U.S. 367 (1979). Scott -vs- Wainwright, 698 F.2d 427, Fn. 4,5,6 and 7 (1983). The constitutional

2.

right to effective assistance of counsel extends to all "critical stages" of the proceedings against the Petitioner. Also see United States -vs- Flores-Ochoa, 139 F.3d 1022, 1024 (5th Cir.) cert. denied, 524 U.S. 959, 118 S.Ct. 2383, 141 L.Ed. 2d 749 (1998). To demonstrate ineffective assistance of counsel, a criminal petitioner must demonstrate both that his counsel's representation was deficient and that the Petitioner was prejudiced by counsel's deficient performance. See Strickland -vs- Washington, 466 U.S. 668, 104 S.Ct. 2054, 80 L.Ed. 2d 672 (1984); Williams -vs- Taylor, 529 U.S. 362, 390, 120 S.Ct. 1029, 1034, 145 L.Ed 2d 985 (2000). The proper standard for attorney performance is "an objective standard of reasonableness" measured under prevailing pro- fessional norms. Hughes -vs- Borg, 898 F.2d 695, 702 (9th Cir. 1990). Romano -vs- Gibson, 239 F.3d 1156, 1180 (10th Cir). cert denied, 534 U.S. 1046, 122 S.Ct. 628, 151 L.Ed. 2d 548 (quoting Strickland, 466 U.S. at 688). The "ultimate focus of inquiry must be on the fundamental fairness of the challenged proceeding". 239 F.3d 1180 (quoting Strickland 466 U.S. at 687)

To establish prejudice, the Petitioner must show there is a "reason- able probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different". See Romano, 239 F.3d at 1180 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052); Williams, 529 U.S. at 391, 120 S.Ct. 1511, 12); Holsom -vs- White, 133 F.3d 1385 (11th Cir. 1998); Wiggins -vs- Smith, 156 L.Ed. 2d 484, 1c, 1b and 8a, 8b; Massaro -vs- United States, 155 L.Ed. 2d 714 (2003); United States -vs- Wingo, 41 Fed. Appx. 237 n.2 (10th Cir. 2002); Glover -vs- United States, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed. 2d 604.

3.

The Petitioner was denied effective assistance of counsel in this case. A claim of ineffective assistance of counsel raise cognizable constitutional issues that can serve as a basis of a motion under §2255. See U.S. -vs- Giardino, 797 F.2d 30, 31 (1st Cir. 1986). The Sixth Amendment Right to the United States Constitution  provides that in a criminal prosecution, the accused shall have the right to the assistance of counsel for his defense. The United States Supreme Court has held that this right includes the right to effective assistance of counsel. McMann -vs- Richardson, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 25 L.Ed. 2d 763 (1970). Pursuant to this constitutional mandate, a petitioner is entitled to reasonably competent assistance of counsef from pre plea investigation and preparation through advocacy at sentencing. U.S. -vs- Garcia, 698 F.2d 31, 33-34 (1st Cir. 1983). The United States Supreme Court has held that in order for a petitioner to show that counsel's assistance was so ineffective at sentencing stage to warrant vacating or correcting a sentence under 28 U.S.C. §2255, 2255(8) and 2255(6)(3), the petitioner must show (1) that his counsel's acts or omissions made counsel's overall performance fall below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's errors, the outcome would be different. Petitioner contends that but for the following errors by counsel, the outcome of the proceedings would have been different:

(1). The Petitioner's counsel's failure to give a constitutional objection or regular objection to the use of the prior conviction to enhance the petitioner's sentence under 924(e).

4.

(2).  The Petitioner's counsel's failure to file a timely Rule 29
or 35(c) should thus provide sufficient authority for a district court
to correct obvious sentencing errors (Fed. R. Crim. P. 35 a 1991 amend-
ment.

(3). The defense counsel knew that if the defendant did not raise
Apprendi, Blakely, Booker, Fan-Fan, Shephard and Almendarez-Torres at
sentencing the only other time he could raise this issue is on direct
appeal.

(4). The Petitioner's counsel's failure to investigate according to
the ABA Guidelines provide that investigation into mitigating evidence
should comprise efforts to discover all reasonably available mitigating
evidence and evidence to rebut any aggravating mitigating evidence for
sentencing purpose.

(5). The Petitioner's counsel's failure to make a constitutional obj
ection when the district court committed plain error in treating the
Sentencing Guidelines as mandatory in sentencing petitioner, requiring
resentencing.

The notion that defense counsel must obtain information that the
Federal Government has and will use against the defendant is not simply
a matter of common sense. As the Petitioner points out, the American
Bar Association Standard for Criminal Justice in circulation at the time
of Moultry's sentencing describes the obligation in terms no one could
misunderstand in the circumstances of a case like this one. It is the
duty of the counsel to conduct a prompt investigation of the circum-
stances of the case and the penalty in the event of conviction.

5.

The investigation should always include efforts to secure information
in the possession of the prosecution and law enforcement authorities.
The duty to investigate exists regardless of the accused's admission
or statement to the counsel of facts constituting guilt or the accused's
stated desire to plead guilty. ABA Standard for Criminal Justice 4-4.1
(2ed 1982 Supp.).

The Petitioner contends that the likelihood of a different result
if the evidence had been presented by counsel was sufficient to undermine
the confidence in the outcome reached at sentencing. Petitioner asserts
that a remand for resentencing is required because the district court
violated the Petitioner's Sixth Amendment rights by making factual
determinations while applying the sentencing guidelines in a mandatory
fashion. The error was not harmless, in that it increased the guide-
line range. U.S.C.A Const. Amend. 6

Recognized as unconstitutional in part are 18 U.S.C. §3553(b)(1),
18 U.S.C. §3742(e), 4B1.1, 924(e), 4B1.4(a) and 4B1.4b2. The Petiti-
oner finds support for this proposition in <u>U.S. -vs- Cornog</u>, 945 F.2d
1504, 1506 n.3 (11th Cir. 1991. In <u>Cornog</u>, the Honorable Judge Tjoflat,
then Chief Judge stated "we believe, however, that congress intended us
to consider...[t]he use of the longest sentence of imprisonment because
it logically relates to the calculation of criminal history category
under the guidelines §4A1.1 which scores the defendant a number of
points based on the length of his prior sentences. In other words, if
the court that sentenced the defendant thought that the sentences should
be serve concurrently rather than consecutively, it would be fair only
to consider the longest sentence...the district court may not "double

6.

count" sentences when a prior court judged that a "single" sentence
accurately reflected the severity of the defendant's crimes..." at 1506
n.3 as in the defendant's case. See also U.S. -vs- Jackson, 883 F.2d
1007 (11th Cir. 1989). Jackson was convicted of count 1, bank robbery and
count 2, use of a firearm during the robbery. For the bank robbery
Jackson was sentenced to 52 months and five years for count 2. At sen-
tencing it was shown that Jackson had two prior arm robberies in the
State of Georgia, which "occurred eight days apart and indicted seperate-
ly, but were tried together and therefore counted as one offense under
the Guidelines". Sentencing Guidelines §4A1.2(a)(2); See also U.S. -vs-
Ngo, 406 F.3d 839 (7th Cir. 2005); U.S. -vs- White, 406 F.3d 827 (7th Cir.
2005); U.S. -vs- Castillo, 406 F.3d 806 (7th Cir. 2005). The caveat about
the sources is important after the Supreme Court's recent decision in
Shephard -vs- United States, 125 S.Ct. 1254 (2005), where the court held
that sentencing courts may not look to police reports or complaint
application to determine whether an earlier guilty plea for burglary
amounted to a "generic burglary" that counts as a "violent felony" under
the Armed Career Criminal Act.  See 18 U.S.C. §924(e) (mandating a
minimum 15 year sentence for anyone possessing a firearm after three
prior drug offenses or violent felonies). According to the Shephard
court, later courts considering such questions are "generally limited to
examing the statutory definition, charging document, written plea
agreement, transcripts of plea colloquy and any explicit factual finding
by the trial judge to which the defendant assented". Shephard, 125 S.Ct.
at 1257. However, the petitioner do not know if the district relied on
the State Court plea transcripts. Moreover, the government and PSI

7.

referred to the police report at sentencing which is a source that may not be considered under Shephard. Because of the uncertainty in this case about the sources relied on by this court, this should be remanded back and a Paladino style hearing should be held so that the district court judge can inform the Petitioner if he reached the conclusion about 18 U.S.C. §924(e) status based on sources of "conclusive significance" under Shephard and whether he would reimpose his original sentence had he known that the guidelines were not mandatory. See United States -vs- White, 406 F.3d 827 at #7 (7th Cir. 2005)("[t]he mere mandatory appli-cation of the guidelines...if district court believes that it was required to impose a guidelines sentence constitutes error."), if the judge states that he relied on the P.S.I. and the police reports or other sources that is improper under Shephard or that he would have imposed a different sentence had he known that the guidelines were ad-visory.

The Petitioner contends that there is a recognized need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct because the guidelines are now merely advisory. The Petitioner argues that the applicable guide-line sentence is greater than necessary to achieve the purpose to the Sentencing Reform Act. 18 U.S.C. §3553(a). "[T]he guidelines are the product of policy decisions by the Sentencing Commission...if those policy decisions are no longer namdatory, the sentencing judge is free to disagree with them." Booker, 125 S.Ct. at 790 n.3 (Scalia, J., diss-enting). However, in point of fact, the Sentencing Commission itself has

8.

long disagreed with the disparity in sentencing between cocaine base or crack and powder cocaine. Generally, the Sentencing Guidelines are the only available guide for a district judge to use in attempting to impose uniform sentences. The guidelines treatment of crack cocaine versus their treatment of powder cocaine however, may in and of itself, create an unwarranted disparity. The guidelines sentencing structure for cocaine offense was a result of the Anti Drug Abuse Act of 1985. Pub. L. No. 99-570, 100 Stat. 3207 (1986). The act created mandatory minimum sentences for trafficking in various controlled substances. See 21 U.S.C. §841(b). In addition, it introduced what has come to be known as the "100 to 1" quantity ratio between powder cocaine and crack. The Act's ten year mandatory minimum sentence is triggered by an offense involving five kilograms of powder cocaine or mere 50 grams of crack. In 1987, the Sentencing Commission adopted the 100 to 1 ration and offenses involving five grams of crack were given he same guidelines base offense level as offenses involving 500 grams of cocaine powder.

Concern and criticism in regard to these sentencing disparities prompted Congress to enact the Violent Crime Control and Law Enforcement Act of 1994, which directed the Sentencing Commission to examine the issue and report "on issues relating to sentences applicable to offenses involving the possession or distribution of all forms of cocaine." Pub. L. No. 103-322 §280006, 108 Stat. 2097 (1994). The Act specifically directed the Commission to consider "the differences in penalty level that apply to different forms of cocaine." Id. In 1995, the Commission issued a report that strongly recommended that the 100 to 1 ratio be reduced. On May 11, 1995, the commission presented to congress several amendments to the guidelines. 60 Fed. 25.074 (1995). The commission

9.

unanimously agreed that the 100 to 1 ratio was too great, and a majority recommended instead adopting a 1 to 1 equivalence between crack and powder cocaine. 60 Fed. Reg. 25077. Although Congress did not adopt the amendment, it directed the commission to make further recommendation regarding cocaine sentencing. See Pub. L. No. 104-38, §2(a)(1)(A), 109 Stat. 334 (1995).

The commission was directed to maintain stiffer sentences for crack offenses than for cocaine offenses; however, it was free to recommend a less severe ratio. Id. In 1997, the commission issued another proposal again stating that 100 to 1 was unjustifiable and recommended a 5 to 1 ratio. In July of 1997, the Attorney General also recommended a 5 to 1 ratio, and the Clinton Administration publicly proposed reducing the 100 to 1 ratio. However, no bill was introduced to implement any of these recommdndations and no formal amdndment to the guidelines was proposed.

In 2002, the commission again unanimously found that the 100 to 1 ratio was unjustified. 2002 report at 91. The commission also stated that the ratio "fails to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 Act." The commission concluded that the "intrinsic harm posed by the two drugs (e.g. addict- iveness)" did justify some degree of difference in base offense levels, which could be reflected in a less severe ratio of 20 to 1.

In the case at bar, by using the 17 grams of crack as found in the presentence report, iEfthe court were to employ either the 20 to 1 ratio most recently recommended by the commission, or the 10 to 1 ratio recommended by the Clinton Administration, the Petitioner's base offense would be 24 rather than 26 with a criminal history category of 2

10.

resulting in a sentence of 57 to 71 months. The Commission's 1997 recommendation of 5 to 1 produces a base offense level of 20 and a sentence of 37 to 46 months. Finally, the Commission's 1995 recommendation of 1 to 1 equivalency results in a base offense level of 14 and a sentence of 18 to 24 months.

Obviously, there is an extreme disparity between the Petitioner's present guideline range of 57 to 71 months (or the guideline range of 151 to 188 months based on the judge finding or the Petitioner admitting to at least 50 grams) and the sentences that he could have received had any of the recommendations to reduce the 100 to 1 ratio of punishment between cocaine base found guilty of similar conduct are not treated the same utilizing the guidelines for cocaine base and cocaine.

Since Booker, a number of courts have accepted the argument that in cases involving crack, they should consider non-guideline sentences. See e.g., United States -vs- Smith, 359 F.Supp 2d 771 (E.D. Wis. 2005) (granting below guideline sentence to defendant convicted of crack offense); Simon -vs- United States, 2005 WL 71916 (E.D. N.Y.) ; United States -vs- Carvajal, 2005 WL 476125 (S.D.N.Y.); United States -vs- Nellum, 2005 WL 300073, at #3 (N.D. IN); U.S. -vs- Moreland, 366 F.Supp 2d 771 (S.D.W.VA. 2005); U.S. -vs- Beamon, 373 F.Supp 2d 878 (E.D. Wis. 2005); U.S. -vs- Leroy, 373 F.Supp 2d 887 (E.D. Wis. 2005); U.S. -vs- Qualls, 373 F.Supp 2d 873 (E.D. Wis. 2005); U.S. -vs- Williams, 372 F.Supp 2d 1335 (M.D. Fl., 2005).

11.

In a 28 U.S.C. §2255, <u>Booker</u> constitutes an intervening change in the law. See <u>Davis -vs- United States</u>, 417 U.S. 333 (1974). The Supreme Court held that Habeas Petitione can use §2255 motions to challenge a conviction obtained under a statute subsequently declared invalid by the courts. The Supreme Court reasoned that upon a conviction "for an act that the law does not make criminal" inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under §2255. Id. 417 U.S. at 347, 110 S.Ct. 2305. See also <u>U.S. -vs- Addoñizio</u>, 442 U.S. 178, 186-87, 99 S.Ct. 2235, 2241, 60 L.Ed. 2d 805 (1979). As a result of Davis, the doors of collateral review are open for Petitioner's who can show through an intervening change in the law.

Like <u>Booker</u>, the Supreme Court in <u>Patterson -vs- McLean Credit Union</u>, 491 U.S. 164, 105 L.Ed. 2d 132, 109 S.Ct. 2363 (1989), interpreted a 123 year old statute differently than appellate courts had done since its enactment. As to Patterson's retroactivity, the court said:

> "A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decidion of the case giving rise to the construction [], thus, Patterson provides the authoritative interpretation of the phrase make and enforce contracts in the Civil Rights Act of 1866 before the [congressional] 1991 amendment [over-ruling Patterson] went into effect on November 21, 1991. [Patterson's] interpretation provides the base line for our conclusion that the 1991 amendment would be retroactive if applied to cases arising before that date."

Moreover, Booker has made its rules retroactive th rough its guidelines clarify amendments are retroactive. See e.g., <u>United States -vs- Garcia-Cruz</u>, 40 F.3d 986, 990 (9th Cir. 1994)("under the law of our

12.

circuit, amendments to the Sentencing Guidelines which are clarifying as opposed to "substantive" may be given retroactive effect"). See also United States -vs- Stinson, 30 F.3d 121, 122 (11th Cir. 1994) (per curiam)(collecting cases). Booker made no substantive changes to the guidelines. It merely interpreted them (Breyer, J., slip opinion, pg 25) (our remedial interpretation of the Sentencing Act) advisory as "congress would have intended" (Id pg. 2) had its mandatory provision violated the Sixth Amendment right to jury trial. See also i.d., pg. 22. (Hence we have examined the statute in depth to determine congress' likely intent in light of todays holding.") (emphasis original).

On January 12, 2005, the U.S. Supreme Court in United States -vs- Booker, held that the federal sentencing guidelines were unconstitutional, effectively amending the guidelines, whereby the court in Booker modified the federal sentencing guidelines nunc pro tunc to their November 1987 effective date:

> "We answer the question of remedy by finding the provision of the federal sentencing statute that makes the guidelines mandatory, 18 U.S.C. §3553(b)(1) (Supp. 2004), incompatible with today's constitutional holding. We conclude that this provision must be severed and excised, as one other statutory section §3742(e) (main ed. and Supp. 2004), which depends upon the guidelines mandatory nature, so modified the Federal Sentencing Act, See Sentencing Reform Act of 1984, as amended, 18 U.S.C. §3551 et., seq., 28 U.S.C. §991 et., seq., makes the guidelines effectively advisory. (Booker, Breyer, J., Slip opinion. pg. 2)

Furthermore, Congress's power to make or amend remedial statutes retroactively absent ex post facto problem is unquestionable. See Freeborn -vs- Smith, 69 U.S. at 168, 17 L.Ed. 923 (we do not question

13.

the validity of retrospective statutes  that are purely remedial").

See also <u>Frisbie -vs- Whitney</u>, 76 U.S. 187,  19 L.Ed. 668, 9 Wall  187

(1870). Not only has the Petitioner relied to his detriment on existing

law at the time of sentencing, he has been "mouse trapped" into aban-

doning a remedy.

Those theories of law, detrimental reliance and mouse trapping,

(See <u>Burris -vs- Parke</u>, 95 F.3d 465 (7th Cir. 1996) and <u>Reyes-Hernandez

-vs- INS</u>, 89 F.3d 490 (7th Cir. 1995) were developed specifically to

allow the district court's the discretion to toll a statute's time

period when another statute diminishes substantive rights or remedies.

This is exactly what 18 U.S.C. §3553(b) did when it mandated this court

to utilize the constitutionally offensive  subsections requiring

enhancement of the sentence by judicial fact finding beyond the juries

or plea. This coupled with the circuit precedent at the time disallowed

the Petitioner to timely seek a remedy to correct what we now know to

be a fundamentally unfair and unjust sentence enhancement. Although at

the time, this court was in effect hand-cuffed by the guidelines, its

sentence was based on an erroneous view of the law and amounts to a

miscarriage of justice (Schlup -vs- Delo, 115 S.Ct. 815 (1995) citing

Cooter and Gell -vs- Hartmarz Corp., 496 U.S. 384 (1990)).

In <u>Kaufman -vs- U.S.</u>, 394 U.S. 217, 22 L.Ed. 2d 227, 89 S.Ct. 1068

(1961). A Federal Habeas Corpus relief is not to be denied to prisoner

alleging constitutional deprivations solely on the ground that relief

should have been sought by Appeal. In <u>Massaro -vs- United States</u>, 155

L.Ed. 2d 714 (2003) an ineffective assistance of counsel claim may be

brought in a collateral proceeding under §2255, whether or not the

14.

Petitioner could have raised the claim on direct appeal does not promote the procedural default rules objectives (conserving judicial resources and respecting the law's important interest in the finality of judgment.

The fact when examined in conjuction with Moultry's sentence under all counts mean that because of counsel's error, additional months in prison, this additional prison time constitutes prejudice. See Glover -vs- United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed. 2d 604, (2001)("authority does not suggest that a minimal amount of additional time in prison can constitute prejudice. It suggest that any amount of actual jail time has a Sixth Amendment significance").

Although the amount of time by which a defendant's sentence is increased by a particular decision may be a factor in determining whether counsel's performance in failing to argue the point constitutes ineffective assistance, under a determinate system of constrained discretion such as the sentencing guidelines, it cannot serve as a bar to a showing of prejudice. Here the court should consider the sentencing calculation itself, which resulted that an error has occurred. This would have been correctable on appeal, but it is clear that prejudice flowed from the asserted error in sentencing.

A person attacking their sentence who might show deficient performance in counsel's failure to object to an error of law affecting the calculation of a sentence, because the sentence increase does not meet some base line standard of prejudice. Quite to the contrary, the jurisprudence suggest that any amount of jail time violates the Sixth Amendment. Compare Argersinger -vs- Homlin, 407 U.S. 25, 321 L.Ed. 2d 530, 92 S.Ct. 2006 (1972)(holding that the assistance of counsel must be

15.

provided when a defendant is tried for a crime that results in a sen-
tence of imprisonment). To determine the question--whether there is a
"reasonable probability" that, but for counsel's unprofessional errors,
the result of the proceedings would have been different. The sentence
in this case constitute substantial prejudice.

## CONCLUSION

In conclusion, Petitioner states that counsel had a number of
avenues that could have been pursued to protect his rights as they
pertain to the circumstances outlined above. The Sixth Amendment guaran-
tees the right to counsel in all criminal prosecution resulting in
actual imprisonment. See <u>Scott -vs- Illinois</u>, 440 U.S. 367 (1979). This
constitutional right extends to all "critical stages" of the proceedings
against the defendant. <u>Coleman -vs- Alabama</u>, 399 U.S. 1 (1970)("[t]he
right to counsel is the right to effective assistance of counsel".
<u>Strickland -vs- Washington</u>, 466 U.S. 686 (1984)).

Moultry's sentence was based on an erroneous view of the law and
amounts to a miscarriage of justice. This coupled with circuit precedent
(at the time of sentencing) disallowed the Petitioner to timely seek a
remedy to correct what we now know to be a fundamentally unfair and
unjust sentence enhancement, although at the time this Honorable Court
was in effect handcuffed and shackled. Now the court is not faced with
those restrictions according to Booker. The Petitioner prays that this
Honorable Court will remand back for resentencing or in the alternative
grant an evidentiary hearing and appoint counsel so that the issues can

16.

be thoroughly litigated and justice can be served.

RESPECTFULLY SUBMITTED ON THIS THE 26 DAY OF January 2006.


ADRIEN MOULTRY, PRO SE
REG. NO. 11383-002
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 7007
MARIANNA, FL., 32447

17.

## CERTIFICATE OF SERVICE

I, Adrian Moultry hereby certify that a true and correct copy of the foregoing motion has been served upon the below listed individuals via, pre-paid U.S Postage affixed thereto, on this the 26 day of January 2006.

CLERK OF COURTS
U.S. DISTRICT COURT
P.O. BOX 711
MONTGOMERY, AL., 36101-0711

MATTHEW MINER
ASSISTANT U.S. ATTORNEY
1 COURT SQ.,
MONTGOMERY, AL., 36104

ADRIAN MOULTRY, PRO SE
REG. NO. 11383-002
FEDERAL CORRECTIONAL INSTITUTON
P.O. BOX 7007
MARIANNA, FL., 32447

18.