**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **)** | |
| | **)** | |
| **Respondent,** | **)** | |
| | **)** | |
| **vs.** | **)** | **CASE NO. 2:06CV79-MHT-DRB** |
| | **)** | **(No. 2:03cr267-T)** |
| **ADRIAN MOULTRY,** | **)** | |
| | **)** | |
| **Defendant/Movant.** | **)** | |
| | **)** | |

**UNITED STATES'S RESPONSE TO § 2255 MOTION**

COMES NOW the United States of America, by and through its attorney, Leura G.

Canary, United States Attorney, and, in compliance with this Court's order, responds to

Defendant/Movant Adrian Moultry's Motion Under § 2255 to Vacate, Set Aside, Or Correct

Sentence By a Person In Federal Custody, as follows:

**I.  PROCEDURAL HISTORY AND RELEVANT FACTS**

**A.  Background**

On November 20, 2003, a grand jury for the Middle District of Alabama returned a three-

count indictment against Defendant/Movant Adrian Moultry.  See Exhibit A, the Indictment.

Count 1 of the indictment charged that, on or about May 31, 2003, in Pike County, Alabama,

within the Middle District of Alabama, Moultry knowingly and intentionally possessed with the

intent to distribute 5 grams or more of a mixture and substance containing cocaine base, a

Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

Count 2 of the indictment charged that, on or about May 31, 2003, in Pike County,

Alabama, Moultry, having been convicted of listed felonies, each of which was punishable by

imprisonment for a term exceeding one year under the laws of the State of Alabama, did

knowingly possess in and affecting commerce a firearm, namely, a Bryco Arms, Model Jennings

Nine, 9 millimeter semi-automatic pistol, bearing serial number 1497844, in violation of 18

U.S.C. § 922(g)(1). Count 2 set forth Moultry's ten burglary consecutively numbered

convictions, all in the Circuit Court of Pike County, Alabama. Exhibit A, at 2.

Count 3 of the indictment realleged the facts set forth in Count 1, and charged that, on or

about May 31, 2003, in Pike County, Alabama, Moultry knowingly used and carried a firearm,

namely, a Bryco Arms, Model Jennings Nine, 9 millimeter semi-automatic pistol, bearing serial

number 1497844, during and in relation to, and knowingly possessing said firearm in furtherance

of, a drug trafficking crime for which he may be prosecuted in a court of the Untied States,

namely the drug trafficking crime charged in Count 1 of the indictment, all in violation of 18

U.S.C. § 924(c)(1)(A).

Moultry filed a motion to suppress evidence seized on May 31, 2003. (Doc. #9). After

conducting a suppression hearing on March 18, 2004, the United States Magistrate Judge

recommended that the motion be denied. (Doc. #26). Moultry filed objections to the Report and

Recommendation. (Doc. #32). On April 22, 2004, this Court overruled Moultry's objections

and adopted the Magistrate's Recommendation against suppression. (Doc. #42).

## B. **Plea Agreement and Plea Hearing**

Moultry then entered into a guilty plea agreement on April 22, 2004. See Exhibit B,

guilty plea agreement. The agreement provided that, in return for Moultry's guilty pleas to each

count of the indictment,  the United States would (1) recommend that he receive credit for

acceptance of responsibility at sentencing, (2) recommend that he be sentenced at the low end of

the applicable guidelines imprisonment range, which the agreement calculated as 262 months of

imprisonment, and, (3) consider his cooperation with prosecutors as a ground for a downward departure at sentencing pursuant to U.S.S.G. § 5K1.1 and/or Rule 35, Federal Rules of Criminal Procedure.  Exhibit B, at 4-5.  Moultry agreed to waive his rights to appeal any sentence that did not include an upward departure from the applicable guidelines range.  Id. at 10.  He also waived his right  to challenge his sentence in a post-conviction proceeding.  Id.  The agreement also set forth the factual basis for the plea by listing Moultry's ten previous burglary convictions, his knowing possession of the Bryco Arms, Model Jennings Nine, 9 millimeter semi-automatic pistol, and intentional possession of 17 grams of cocaine base.  Id. at 6-7. The agreement specified that the cocaine base was prepared for distribution in individual plastic bags, and that Moultry acknowledged that he intended to distribute the substance.  Id. at 7.  The factual basis concluded with Moultry's stipulation that his actions violated 21 U.S.C. § 841(a)(1) and 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A).  Id.

A plea hearing was held in Moultry's case on April 23, 2004.  See Exhibit C, a transcript of the hearing.  Debra Hollis represented Moultry during the hearing pursuant to authorization by his own counsel, Susan G. James.  Exhibit C, at 2-3.  At the outset of the hearing, he was placed under oath and affirmed to the Court his consent to Ms. Hollis's participation in his guilty plea. Id. at 4.  The Court determined that Moultry understood the various drug and gun charges for which he was indicted, that Ms. James had explained the charges to him, and that he understood the terms of his plea agreement when he signed the document.  Id. at 5-7.

The Court asked the United States to summarize the terms of the plea agreement.  Id. at 7. The United States briefly explained that, in exchange for Moultry's agreement to plead guilty to each count of the indictment, his total offense level would be reduced by three for acceptance of

responsibility.  Id. at 7.  It also stated that it would recommend that Moultry be sentenced at the

low end of the applicable guideline range, which the agreement calculated as 262 months, and

that this sentence was the relevant starting point for any additional reduction in sentence based

upon Moultry's cooperation.  Id. at 7-8.  The Court further clarified for Moultry that 262 months

was the low end of his expected sentence.  Id. at 9-10.  Moultry stated that he understood the

likely sentencing range and his ability to reduce that range through his cooperation with the

United States.  Id. at 10.  Later, the Court again emphasized to Moultry that, although the specific

guidelines applicable to his case were unknown at that time, there would be no deviation from

the United States' commitment that the low end of his range was 262 months.  Id. at 11.  The

record also shows that the Court specifically informed Moultry that part of his plea agreement

was "giving up the right to make an appeal from your conviction and sentence," or "to attack [the

conviction and sentence], directly or indirectly," absent government misconduct or ineffective

assistance of counsel.  Id. at 10-11.

The Court then ensured that Moultry understood the civil rights that he would be

relinquishing by pleading guilty.  Id. at 12.  Next, it stated the maximum possible sentence for

each count of conviction as follows:  (1) not less than five, but not more than forty years under 21

U.S.C. § 841(a)(1); (2) not less than fifteen nor more than life under 18 U.S.C. § 922(g)(1); and,

(3) not less than five, but not more than life under 18 U.S.C. § 924(c)(1)(A).  Id. at 12-14.  The

Court noted that Moultry's sentence for violating 18 U.S.C. § 922(g)(1) was enhanced, and the

United States informed the Court that the enhancement was based upon Moultry's criminal

history.  Id. at 13; see also 18 U.S.C. § 924(e).  The Court then addressed itself directly to

Moultry, and asked if there was anything that he "didn't understand about the punishment that

would apply in [his] case for being a convicted felon in possession of a firearm?" Id. at 13-14. Moultry's response was "[N]o, ma'am." Id. at 14.

The Court then explained to Moultry that, if he proceeded to trial, he would be presumed innocent and that the United States would have to prove his guilt beyond a reasonable doubt, but that his entry of a guilty plea would result in a forfeiture of those rights. Id. at 15. It then reviewed each element that the United States would have to prove during a trial. Id. at 15-17. The Court told Moultry to establish a factual basis for his guilty pleas. Id. at 18. He informed the Court that, on May 31, 2003, he had ten convictions for third-degree burglary in Pike County, Alabama and that he knew that he was prohibited from possessing a firearm. Id. at 19. Moultry proceed to state that on that same date he possessed 17 grams of cocaine base, that he intended to distribute the substance, and that he also possessed a Bryco Arms nine millimeter firearm. Id. at 19-22. He also stated that he possessed the firearm for security purposes while he was distributing the cocaine base. Id. at 22. The United States stated for the record that, if Moultry proceeded to trial, it could establish that the firearm was not manufactured within the State of Alabama, and therefore, it had traveled in interstate commerce. Id. at 22-23. Ms. Hollis stipulated to this fact. Id. at 23-24.

The Court then found that Moultry was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, that the plea was knowing and voluntary and that it was supported by an independent factual basis containing each of the essential elements of the offense. Id. at 25. The Court then stated that it would recommend that Moultry's plea be accepted and that he be adjudged guilty. Id.

**C.  Booker Case**

On January 12, 2005, the United States Supreme Court issued a decision in United States

v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).  On that same date, the Court ordered the United

States, the United States Probation Office, and Moultry to file briefs or statements addressing the

impact of the Booker ruling on this case.  (Doc. #77).  The United States filed its post-Booker

sentencing memorandum on January 19, 2005, which was followed by the Probation Office on

January 20, 2005.  (Doc. ##78, 79).  Moultry filed his sentencing memorandum on February 9,

2005.  (Doc. #85).

**D.  Sentencing**

Sentencing proceedings began in Moultry's case on February 4, 2005.  See Exhibit D, a

transcript of the hearing conducted on February 4, 2005.  During its summary of the plea

agreement, the United States noted that it had filed for a downward departure of four years, or 48

months, due to Moultry's assistance to law enforcement.  Exhibit D, at 3-5.  It was also noted

that an additional motion for departure could result from Moultry's cooperation.  Id. at 5.

Moultry's counsel argued that his sentence should not be enhanced for criminal history under the

career criminal or armed career criminal provisions of the Sentencing Guidelines because his

prior convictions were not proven to a jury or admitted during the plea colloquy.  Id. at 5-6.

Counsel based her position on the fact that the Pike County burglary convictions resulted from a

one-day crime spree, and that "spree" conduct did not trigger the enhancements under the armed

career offender and career offender provisions in the Sentencing Guidelines.  Id. at 6-7.[1]

---

[1]  Contrary to counsel's assertion at sentencing, Moultry admitted ten prior convictions
for burglary in the Circuit Court for Pike County, Alabama in his plea hearing.  See Exhibit C, at
19.  This factual basis for the enhancements was noted by the United States at sentencing.

As argument continued, the Court entertained Moultry's challenge to his categorization as a career criminal pursuant to U.S.S.G. § 4B1.1(a), an armed career criminal pursuant to U.S.S.G. § 4B1.4, and the applicability of the Armed Career Criminal Act (ACCA) pursuant to 18 U.S.C. § 924(e). Id. at 12-37. The United States highlighted that, though "related" crimes were not treated as separate convictions for purposes of U.S.S.G. § 4B1.4, the statutory criteria in the ACCA did not exclude successive crimes, such as the burglaries committed by Moultry during a crime spree. Id. at 28-29.

Moultry took the stand to establish a factual background for his prior convictions, which was necessary for the Court to determine which, if any, Guidelines provisions should apply to his sentence. Id. at 37. Under questioning from his counsel, the United States, and the Court, Moultry described how he and a small group of acquaintances developed and executed a plan to commit serial burglaries of various mobile homes in Pike County, Alabama. Id. at 38-58. At the conclusion of his testimony, the hearing was then recessed, which permitted the parties to further evaluate their positions regarding the applicability of the career offender provisions of the Guidelines.

 Sentencing proceedings later resumed on February 10, 2005. See Exhibit E, a transcript of the hearing conducted on February 10, 2005. Moultry's counsel acknowledged that his guilty plea satisfied the statutory definition for an armed career offender, but that he was still objecting to the application of the armed career offender in the Guidelines. Exhibit E, at 4. After discussing the facts of Moultry's prior burglary convictions, the United States conceded that Moultry was not subject to the career criminal enhancement under U.S.S.G. § 4B1.1, but

---

Exhibit D, at 60-61.

continued to assert that he was subject to the armed career-criminal enhancement under U.S.S.G. § 4B1.4. Id. at 14-15, 18-19. Defense counsel reluctantly acknowledged that the armed career offender enhancement under U.S.S.G. § 4B1.4 would apply, given Moultry's plea colloquy and case law provided by the United States. Id. at 19. This resulted in a calculation of 240 months in prison as Moultry's statutory minimum sentence. It was determined by adding a consecutive 60-month sentence required for his conviction under 18 U.S.C. § 924(c) and the 15 year, or 180-month, minimum sentence required under 18 U.S.C. § 924(e)(1). Id. The parties then agreed that after subtracting the 48 months recommended in the United States' motion for a downward departure, Moultry's resulting sentence was 192 months. Id. at 20; Exhibit D, at 4-5.

Defense counsel then petitioned the Court to apply its discretion under United States v. Booker whereby it would first determine the appropriate guideline range, and then decide whether it would accept or reject the recommended sentence. Id. at 21. The parties agreed that, absent Moultry's statutorily mandated minimum sentence, his guideline sentencing range was 188 to 235 months. Id. at 21-22. The Court then stated, that, if it approved the United States' motion for a downward departure from the statutory minimum, the resulting sentence would be within the guideline range advocated by Moultry. Id. at 23. In response to counsel's argument that the departure of 48 months should be made from 188 months, or the low end of the guideline range, the Court repeatedly indicated that it could not reject the statutory minimum of 240 months, even after Booker's ruling that the Sentencing Guidelines were advisory. Id. at 28-35. Counsel voiced her position that the Court could make a further reduction in sentence by applying the factors enumerated at 18 U.S.C. § 3553(a). Id. at 33-41.

8

Counsel then asked and received the Court's permission to question Moultry in an effort to establish the nature of his cooperation and secure a higher departure than the one requested by the United States. Id. at 43-47. The United States stated its wholehearted agreement with the value of Moultry's information, but cautioned that, because no formal prosecution had yet resulted, Moultry had not yet been asked to testify during any proceeding, and that his eventual testimony would provide a basis for further reductions at the appropriate time. Id. at 47-49. Counsel then requested that the Drug Enforcement Administration (DEA) agent who had worked with Moultry provide testimony. Agent Larry Hubbard was sworn and informed the Court that Moultry had indeed supplied valuable information to his agency, but that no arrests or prosecutions had yet resulted. Id. at 50-56.

After an additional clarification of the terms of Moultry's plea colloquy and controlling circuit caselaw, the Court restated the points upon which the parties agreed and disagreed and summarized the provisions applicable to his sentence. The parties agreed that section 4B1.4 of the Sentencing Guidelines applied, thus classifying Moultry as an armed career criminal. The parties also agreed that section 4B1.1 of the Guidelines, the career offender provision, did not apply. Id. at 78-79. The United States disagreed with Moultry that the Court could reduce his sentence by more than the four years requested in its motion and insisted that Booker did not permit the Court to entertain any argument supporting further reductions under 18 U.S.C. § 3553(a). Id. at 79-80. The Court overruled Moultry's contention that his sentence could be further reduced, citing United States v. Aponte, 36 F.3d 1050 (11th Cir. 1994). Id. at 38-39, 80.

The Court specifically found that Moultry's offense level was 30 and that his criminal history category was IV, which produced a guideline imprisonment range of 180 to 188 months.

Id. at 84-85.  The Court next found that the United States' motion for a downward departure pursuant to U.S.S.G. § 5K1.1 should be granted, and that Moultry's sentence should be reduced by four years.  Id. at 85.  It also specifically stated that it considered the Sentencing Guidelines as advisory, had considered the factors in 18 U.S.C. § 3553(a), and that Moultry should be imprisoned for a total term of 192 months.  Id.  The Court also specified that the sentence consisted of concurrent terms of 132 months each on Counts 1 and 2, served consecutively to a term of 60 months on Count 3.  Id. at 85-96.

Moultry requested that the Court specify whether, after considering the sentencing factors in 18 U.S.C. § 3553(a), it would have stated a lower sentence if it had the discretion to do so, for purposes of showing Booker error.  Id. at 87.  The Court twice noted the statutory minimums applicable to Moultry's sentence, but informed Moultry that but for the statutory requirements, it would have imposed a total sentence of 120 months.  Id. at 93-94.  The Court concluded sentencing with a caution to Moultry that, although he had waived his right to appeal, the waiver was debatable in such a complicated case.  Id. at 95.  Judgment was entered in Moultry's case on February 16, 2005.  (Doc. #87.)

Moultry filed a Motion to Reopen Sentencing Pursuant to Fed. R. Crim. P. 35(a) on February 21, 2005.  (Doc. #88.)  He recounted the strategic choices made during sentencing concerning the application of the career offender and armed career offender enhancements and counsel's recent review of the documentation of his prior convictions before asserting that he should not have been sentenced as an armed career offender pursuant to statute or guidelines provisions.  (Doc. #88, at ¶¶ 1-13).  The motion concluded with counsel's belief that an appeal was not appropriate and her concession that her lack of preparation in the case constituted

ineffective assistance of counsel.  Id. at ¶ 15.  The motion also expressed counsel's willingness to seek a modification of Moultry's sentence under 28 U.S.C. § 2255.  Id.

The United States's response to Moultry's motion argued that the Court was without jurisdiction to act under Rule 35(a) because more than seven days had passed since the Court orally pronounced sentence in his case.  See Exhibit F, United States Response to Rule 35 Motion, at 2 (citing United States v. Morrison, 204 F.3d 1091, 1094 (11th Cir. 2000) ("[T]he seven day period set out in [then] Rule 35(c) begins to run when the sentence in a case is orally imposed, and when seven days are up, the court loses jurisdiction to correct a sentence under that subdivision of the rule.")  The United States also argued that there was Moultry did not seek to use Rule 35 to "correct" his sentence, but rather, was seeking a way to raise whether he was properly sentenced as an armed career offender.  Exhibit F, at 3-4.  The response continued by asserting that Moultry was properly sentenced pursuant to 19 U.S.C. § 924(e)(1) because the armed career offender provision in the Sentencing Guidelines does not treat "related" convictions that are functionally consolidated as separate convictions for enhancement purposes.  See U.S.S.G. § 4A1.2(a)(2) (2004); see also Buford v. United States, 532 U.S. 59 (2001) (discussing the "functionally consolidated" concept for purposes of analysis under the career offender provisions of the U.S. Sentencing Guidelines).  It refused to concede Moultry's ineligibility for ACCA classification, or for the armed career offender provisions of the Sentencing Guidelines, because there is no exception for "related" or consolidated cases under those provisions.  Exhibit F, at 4-6.

The Court ruled that it did not have jurisdiction to entertain Moultry's motion.  See Exhibit G, Order Denying Motion to Amend/Correct Sentence, at 11.  The Order recounted the

11

unusual issues presented during Moultry's sentencing, including the argument over (1) whether his burglary convictions were "related" for purposes of calculating the appropriate sentencing range under U.S.S.G. § 4B1.1(a); and, (2) whether the burglaries for which he was responsible were "committed on occasions different from one another" for purposes of applying 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4.  Exhibit G, at 2-6.  It specifically recognized the inference in Moultry's motion that counsel would have maintained objections to his classification as an armed career criminal, if she had known of the functional consolidation of his burglary convictions in state court.  Id. at 6.

Moultry filed a Motion to Vacate, Set Aside or Correct Sentence on January 26, 2006. On February 1, 2006, this Court entered an order directing the United States to respond within thirty days.  The United States sought an extension of time in which to respond, which this Court granted.  The United States now files this response to Moultry's § 2255 motion.

## II.  CLAIMS RAISED IN THE § 2255 MOTION

As far as the United States can discern, Moultry raises the following issues in his motion under § 2255:

1.    The disparity in punishment for powder and crack cocaine crimes is unreasonable;

2.    Counsel was ineffective due to a failure to object to the use of his prior convictions to enhance his sentence under 18 U.S.C. § 924(e);

3.    Counsel was ineffective for failing to file a timely motion pursuant to Fed. R. Crim. P. 29 or 35(c) to correct an obvious sentencing error;

4.    Counsel was ineffective due to a failure to investigate mitigating evidence for sentencing purposes;

5.    Counsel was ineffective due to a failure to make a constitutional objection when the Court treated the Sentencing Guidelines as mandatory; and,

6.    Counsel should have raised the applicability of several United States Supreme Court decisions during sentencing.

### III.  RESPONSE TO CLAIMS FOR RELIEF

**A.    Moultry's Petition Is Barred Because He Knowingly Waived His Right to Seek Relief Under 28 U.S.C. § 2255 When He Entered His Guilty Plea.**

Moultry agreed to waive his right to seek relief pursuant to 28 U.S.C. § 2255 when he entered into his guilty plea agreement on April 23, 2004.  See Exhibit B, at 5; Exhibit C, at 10-11.  In addition to directly questioning Moultry about his waiver agreement, the Court had previously determined that Moultry had discussed the terms of his plea agreement with his attorney, Susan James, and that he understood the document when he signed it.  Id. at 6.

The Eleventh Circuit views Moultry's waiver of his right to seek relief under § 2255 as a contract between the United States and a criminal defendant.  United States v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999).  It has held that "a waiver of the right to seek federal habeas review must be 'an intentional relinquishment or abandonment of a known right,' the right to federal habeas review."  Allen v. Thomas,161 F.3d 667, 670 (11th Cir. 1998).  The record demonstrates that the Court ascertained that Moultry's assent to the terms of his plea agreement was knowing and voluntary.  Moultry's § 2255 motion is thus procedurally barred from review by this Court.

**B.     Moultry's Motion Satisfies The One-Year Statute of Limitations Deadline for the Filing of Claims Under 28 U.S.C. § 2255.**

 Should this Court decide that Moultry's knowing and voluntary waiver of the right to file a motion under § 2255 is unenforceable, the United States notes that he filed his motion in a timely manner on January 26, 2006.  Paragraph six of 28 U.S.C. § 2255 provides a one-year period of time within which to file a motion under the rule.  The applicable provision in this case

requires that a movant file his § 2255 motion within one year from "the date on which the judgment of conviction became final."  28 U.S.C. § 2255 ¶ 6(4).

The judgment against Moultry was entered on February 16, 2005.  He did not appeal his conviction or sentence to the Eleventh Circuit Court of Appeals.  Although not specifically addressing the application of the statute of limitations to the 10-day notice of appeal requirement, the Eleventh Circuit has held that a judgment of conviction becomes final for someone who appeals to an appellate court when the time for seeking certiorari review in the Supreme Court expires.  See Kaufman v. United States, 282 F.3d 1336, 1337-39 (11th Cir. 2002). Likewise, a judgment of conviction becomes final for someone who does not appeal when the time for seeking that appeal expires.  Therefore, Moultry's sentence became final when the time for filing an appeal to the Eleventh Circuit expired.  Moultry had ten days from the February 16, 2005 entry of judgment by this Court to seek review by the Eleventh Circuit; his judgment of sentence, therefore, became final on February 28, 2005 - the first business day after Saturday, February 26, 2005.  Therefore, under § 2255, Moultry had until February 28, 2006 to file his motion.  His January 26, 2006, filing is, therefore, timely under the limitations period in § 2255 ¶ 6(1).

**C.    Moultry's Challenge to the Different Treatment of Powder and Crack Cocaine Has No Merit.**

The sole non-ineffective assistance of counsel issue presented in Moultry's motion questions the propriety of the disparity in sentences for powder and crack cocaine.  Moultry's case did not raise the disparity question because he was not sentenced pursuant to the drug quantity table in the Sentencing Guidelines.  His convictions carried a statutory minimum of twenty years, and his sentence was based on the United States Code provisions applicable to his

14

offenses.  See Exhibit E at 32, 93-94.  Even if the drug quantity table had been a factor in his sentencing, the Eleventh Circuit had held that the federal court system is the inappropriate vehicle to effect a change in the disparity in punishment for powder and crack cocaine crimes. See United States v. Hanna, 153 F.3d, 1286, 1288-89 (11th Cir. 1998); see also United States v. Pho, 433 F.3d 53 (1st Cir. 2006) (holding that nothing in Booker altered Congress' authority over sentencing policy, and a district court's post-Booker discretion operates "only within the ambit of the individualized factors spelled out in section 3553(a).")

"A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations."  Stephens v. United States, 14 F.Supp.2d 1322, 1334 (N.D. Ga. 1998), quoting United States v. Guerra, 588 F.2d 519, 520-21 (5th Cir.1979).  "[I]n this circuit, as well as in the Supreme Court, when a § 2255 petitioner sets out detailed factual allegations ... the petitioner is entitled to a hearing unless the motion and the files on record conclusively show the petitioner is entitled to no relief...."  Potts v. Zant, 638 F.2d 727, 751 (5th Cir. 1981) (citations omitted).[2]

In addition to being factually inapplicable, the precedent in this circuit, together with Congress' continued authority in sentencing policy, voids Moultry's claim that his sentence was wrongful based on the powder/crack cocaine sentencing differential.  Therefore, his claim that the sentencing disparity rendered his sentence illegal must be dismissed.

---

[2]  In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to the close of business on September 30, 1981.

**D.    Moultry's Ineffective Assistance of Counsel Claims Should Be Rejected Because They Have No Factual Support and No Prejudice Resulted from Counsel's Actions.**

Moultry claims that his counsel provided ineffective assistance by (1) failing to object to the use of his prior convictions to enhance his sentence under 18 U.S.C. § 924(e); (2) failing to file a timely motion pursuant to Fed. R. Crim. P. 29 or 35(c) to correct an obvious sentencing error; (3) failing to investigate mitigating evidence for sentencing purposes; (4) failing to make a constitutional objection when the Court treated the Sentencing Guidelines as mandatory; and, (5) failing to raise the applicability of several United States Supreme Court decisions during sentencing. To succeed on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced his case. Strickland v. Washington, 466 U.S. 668, 694 (1984); see also Bell v. Cone, 535 U.S. 685, 697-98 (2002) (reaffirming the Strickland v. Washington standard for reviewing ineffective assistance of counsel claims); Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001) (applying two-part test of Strickland v. Washington). More specifically, Moultry must show that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his case would have been different. Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

In analyzing counsel's performance under the performance prong of Strickland, this Court must presume that the conduct of counsel was reasonable, Yordan, 909 F.2d at 477. A "[d]efendant must prove deficient performance by a preponderance of competent evidence, and

the standard is 'reasonableness under prevailing professional norms.'" <u>Gallo-Chamorro v. United</u>
<u>States</u>, 233 F.3d 1298, 1303-04 (11th Cir. 2000) (footnotes omitted). The Eleventh Circuit has

described a defendant's burden with regard to the deficient performance prong of an ineffective

assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a
> petitioner seeking to rebut the presumption of adequate performance must bear a
> heavy burden:
>
> The test has nothing to do with what the best lawyers would have done. Nor is the
> test even what most good lawyers would have done. We ask only whether some
> reasonable lawyer at the trial could have acted, in the circumstances, as defense
> counsel acted at trial. . . . We are not interested in grading lawyers' performances;
> we are interested in whether the adversarial process at trial, in fact, worked
> adequately.
>
> . . . Thus, in order to show that counsel's performance was unreasonable, the
> petitioner must establish that no competent counsel would have taken the action
> that his counsel did take. . . .

<u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001) (internal citations omitted).

The Eleventh Circuit has described a defendant's burden in demonstrating that his

counsel's deficient performance prejudiced his case as "high," noting that it is not enough to

show that any errors had some conceivable effect on the outcome of the proceeding. <u>Robinson v.</u>

<u>Moore</u>, 300 F.3d 1320, 1343-44 (11th Cir. 2002). To succeed on the ineffective assistance of

counsel claim, the defendant must show that, but for counsel's unprofessional errors, the

outcome of the proceeding would have been different.

As the Eleventh Circuit has noted, "[i]t is well established that a habeas petitioner must

demonstrate both deficient performance and prejudice, and that a failure to demonstrate either

prong constitutes a failure to demonstrate ineffective assistance of counsel." <u>Bottoson v. Moore</u>,

17

234 F.3d 526, 532 (11th Cir. 2000); <u>accord</u>, <u>Robinson</u>, 300 F.3d at 1343.  In raising ineffective assistance of counsel, Moultry has failed to plead facts sufficient to demonstrate that counsel's actions were either deficient, or that he suffered any prejudice from such actions.  For that reason, his § 2255 claims regarding counsel's effectiveness should be summarily dismissed.  The United States responds to Moultry's ineffective assistance of counsel claims as follows:

**1.  Counsel Was Not Ineffective for Conceding that Moultry's Prior Convictions Were a Basis for Enhancing his Sentence under 18 U.S.C. § 924(e).**

Moultry claims that his counsel was ineffective for failing to continue her opposition to the application of the Armed Career Criminal Act, and the corresponding enhancement in the Sentencing Guidelines.  <u>See</u> 18 U.S.C. § 924(e), U.S.S.G. § 4B1.4.  In the course of pleading guilty to violating 18 U.S.C. § 922(g)(1), Moultry acknowledged that he had ten prior burglary convictions in Pike County, Alabama.  Exhibit C, at 19.  The Eleventh Circuit has consistently upheld the mandatory application of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), which "provides a mandatory minimum sentence of fifteen years for anyone who violates 18 U.S.C. § 922(g) after three convictions for a violent felony or a serious drug offense." <u>United States v. Greer</u>, ___ F.3d ___, 2006 WL 435662, *1 (11th Cir. Feb. 24, 2006); <u>see</u> <u>also</u> <u>United States v. James</u>, 430 F.3d 1150, 1152 (11th Cir. 2005), <u>petition</u> <u>for</u> <u>cert</u>. <u>filed</u> (U.S. Feb. 14, 2006) (No. 05-9264) (remanding for sentencing in accordance with the ACCA).

The record in this case shows that counsel pursued her opposition to the enhancement of Moultry's sentence as far as reason would permit.  The record illustrates her persistence on this matter, and, even when she conceded his eligibility under the ACCA and U.S.S.G. § 4B1.4, it was based on the facts of his case, rather than merely "trading-off" enhancements with the United

States.  Exhibit E, at 18-19.  Further, counsel's representation persuaded the United States to

concede the inapplicability of the career offender enhancement.  The Court itself stated at

sentencing that there was "no question" that Moultry fared better under the ACCA and U.S.S.G.

§ 4B1.4, as opposed to the career offender enhancement at U.S.S.G. § 4B1.1.  Id. at 73.

Moultry cannot demonstrate ineffective assistance or the prejudice component required

under Strickland.  The United States demonstrated at sentencing and when opposing the Rule 35

motion to reopen sentencing that the armed career offender provisions do not carry any

restriction that would prevent their application in Moultry's case.  Exhibit E, at 15; Exhibit G, at

4-6.  Burglary is an enumerated felony under section 924 (e)(2)(B)(ii), and therefore qualifies as a

predicate felony for the application of the fifteen year minimum sentence.  James, 430 F.3d at

1157.  Moultry's ten convictions for burglary were related, but nonetheless separate, and

therefore they qualified him for consideration under the ACCA.[3]  His criminal record, rather than

counsel's performance at sentencing, permitted the application of the ACCA.  And, although it

may have been preferable for counsel to have obtained the documents related to his burglary

convictions, he nonetheless benefitted from her raising the issue of "spree" conduct at the outset

of sentencing proceedings.  His sentence under the ACCA was the correct outcome and the only

outcome in light of the facts of his prior criminal record.  See United States v. Spears, ___ F.3d

___, 2006 WL 820404, No. 04-13297 (11th Cir. March 30, 2006) (convictions which arose from

two robberies which were separated by mere minutes constituted separate criminal episodes for

---

[3]  The Court emphasized in its denial of Rule 35 relief that Moultry was charged with all
ten burglaries in a single indictment, pled guilty to each offense in a single plea agreement, and
received a single sentence for each crime.  Exhibit G, at 4.  The Order also notes, however, that
each offense was assigned a separate docket number.  Hence, Moultry was convicted of ten
separate burglaries of ten separate dwellings.  Id.

ACCA enhancement.)

### 2. Counsel Was Not Ineffective for Failing to File a Timely Motion Pursuant to Fed. R. Crim. P. 29 or 35(c) to Correct an Obvious Sentencing Error.

Moultry asserts that his counsel did not file a timely motion pursuant to Fed. R. Crim. P. 29 or 35(c) to correct an obvious sentencing error. Rule 29 governs motions for judgment of acquittal, which are appropriate in the context of a criminal trial. See Fed. R. Crim. P. 29. Moultry entered a guilty plea to the charges against him, and therefore could not take advantage of Rule 29.

Further, in regards to Rule 35(a), the United States addressed the inapplicability of Rule 35 in its response to his Rule 35(a) motion. Exhibit F, at 3. Because counsel cannot be termed "ineffective" in relation to an issue that would not have succeeded, this claim must fail. See United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

### 3. Counsel Was Not Ineffective for Failing to Investigate Mitigating Evidence for Sentencing Purposes.

Moultry suggests that counsel failed to research mitigating evidence for sentencing purposes. He does not specify what mitigating information would have aided his case, but the United States assumes that he refers to complete information concerning his ten burglary convictions in Pike County, Alabama. While it may have been preferable for counsel to have obtained, on her own, information relevant to Moultry's prior convictions, he was not prejudiced by her failure to do so. The record shows that counsel successfully raised the issue of "spree" conduct when objecting to Moultry's guidelines enhancements. Exhibit D, at 6-7, 12-37. Moreover, her argument led to further argument concerning whether either of the enhancements were even applicable. Thus, her performance cannot be deemed deficient.

20

Finally, the information retrieved by the Court concerning Moultry's prior burglary convictions did not remove him from the coverage of the ACCA and as a result he cannot claim prejudice on this issue. <u>See</u> discussion at Part III.D.1, <u>supra</u>.

### 4. Counsel Was Not Ineffective Because the Court Treated the Sentencing Guidelines as Advisory.

Moultry contends that counsel was ineffective for failing to lodge a constitutional objection when the Court treated the Sentencing Guidelines as mandatory during sentencing, in violation of <u>United States v. Booker</u>. This claim is belied by the facts of this case. The Court was plainly aware that the Sentencing Guidelines were advisory. It specifically requested sentencing briefs from the parties and a statement from the Probation Office on the <u>Booker</u> issue. (Doc. ##77-79, 84). The Court also entertained counsel's <u>Booker</u> arguments for discretionary sentencing and stated for the record that it understood the Guidelines to be advisory. Exhibit E, at 21-43; 85.

### 5. Counsel Was Not Ineffective for Failing to Raise the Applicability of Several United States Supreme Court Decisions During Sentencing.

Moultry asserts that counsel was ineffective for not only failing to raise <u>Apprendi</u>/<u>Blakely</u>/<u>Booker</u>-<u>Fan-Fan</u>, at his sentencing, but also <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998) and <u>Shepard v. United States</u>, 544 U.S.13, (2005). The record plainly shows that the <u>Booker</u> decision's impact on the federal sentencing guidelines was discussed at sentencing. Exhibit E, at 21-43; 85.

In regards to <u>Almendarez</u> and <u>Shepard</u>, however, Moultry has not addressed how those cases could have possibly impacted his case. <u>Almendarez</u> continues to govern the federal sentencing process. <u>See</u> <u>United States v. Martinez</u>, 434 F.3d 1318, 1323 (11th Cir. 2006)

(holding that the United States need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for sentence-enhancement purposes); United States v. Gibson, 434 F.3d 1234, 1246 (11th Cir. 2006) (same).

Moreover, any Shepard argument which Moultry may assert can also be dismissed despite his failure to make a specific argument under that case.  The record shows that the Court determined his prior burglary convictions through his guilty plea colloquy as well as through the indictment charging the crimes, the plea agreement which resolved each case, and the order of judgment.  Exhibit C, at 19; Exhibit G, at 4.

## IV.  A HEARING IS NOT NECESSARY IN THIS MATTER

Moultry has not pleaded facts or presented sufficient evidence or argument which, if true, show that he is entitled to an evidentiary hearing, and his claims for relief should be denied without an evidentiary hearing.  See Blacklidge v. Allison, 431 U.S. 63, 73-74 (1977); Tejada v. Dugger, 941 U.S. 1551, 1559 (11th Cir. 1991); United States v. Laetividal-Gonzalez, 939 F. 2d 1455, 1465 (11th Cir. 1991).  Should this Court determine that Moultry has made any arguments not addressed in this response, the United States would request the opportunity to further respond to those arguments.

## V.  CONCLUSION

For the above reasons, Defendant/Movant Adrian Moultry has failed to demonstrate that he did not knowingly waive his right to file a motion pursuant to § 2255, or that he is entitled to any relief from this Court.  Therefore, his motion must be dismissed with prejudice.

Respectfully submitted this 3rd day of April, 2006.


/s/ Christopher A. Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
christopher.a.snyder@usdoj.gov

23

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **)** | |
| | **)** | |
| **Respondent,** | **)** | |
| | **)** | |
| **vs.** | **)** | **CASE NO. 2:06CV79-MHT** |
| | **)** | **(No. 2:03cr267-T)** |
| **ADRIAN MOULTRY,** | **)** | |
| | **)** | |
| **Defendant/Movant.** | **)** | |
| | **)** | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and have mailed by United States Postal Service the document to the following non-CM/ECF participant: Adrian Moultry, #11383-002, F.C.I. Marianna, Federal Correctional Institution, P.O. Box 7007, Marianna, FL 32447.

Respectfully submitted,

LEURA CANARY
UNITED STATES ATTORNEY

/s/ Christopher A. Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
christopher.a.snyder@usdoj.gov

24