1   RECEIVED IN THE UNITED STATES DISTRICT COURT FOR

2   2004 JUL 27  P 4:50 THE MIDDLE DISTRICT OF ALABAMA

3                    NORTHERN DIVISION

4   DEBRA P. HACKETT, CLK
    U.S. DISTRICT COURT
    MIDDLE DISTRICT ALA.

5

6   UNITED STATES OF AMERICA

7

8       Vs.                    CR. NO. 03-267

9

10  ADRIAN MOULTRY

11

12

13          *     *     *     *     *     *     *     *

14                CHANGE OF PLEA HEARING

15          *     *     *     *     *     *     *     *

16          Before Hon. Delores R. Boyd, Magistrate

17          Judge, at Montgomery, Alabama,

18          Commencing on April 23, 2004

19          *     *     *     *     *     *     *     *

20

21  APPEARANCES: For the Government: Matthew Miner

22                              Assistant U.S. Attorney

23          For the Defendant:  Debra Hollis,

24                              Attorney at Law

25

1           (The above case coming on for hearing at Montgomery,

2    Alabama, April 23, 2004, before Honorable Delores R. Boyd,

3    Magistrate Judge, the following proceedings were had

4    commencing at 11:00 a.m.:)

5           THE COURT:  Are you standing in for Ms. James?

6           MS. HOLLIS:  Yes, I am.  Did you want me to sign her

7    name by Debra Hollis or Debra Hollis for Susan James?

8           THE COURT:  Why isn't she here?

9           MS. HOLLIS:  She is out of town, I don't know the

10   details, and asked if I would stand in, but as I understand

11   she is out of town and her paralegal is here.

12          THE COURT:  Have you had an opportunity to talk with

13   Mr. Moultry?

14          MS. HOLLIS:  Yes, I have had an opportunity to talk

15   with him.  It's my understanding that he has gone over the

16   faxed copy of the plea agreement.

17          THE COURT:  Why don't I give you a minute to talk

18   with him and that he has no question about you standing in

19   for Ms. James.

20          MS. HOLLIS:  I have already done that, but I will do

21   it again if you want me to.

22          THE COURT:  I am going to ask on the record if he is

23   fully satisfied.  You have not represented him in any of the

24   proceedings in this case, you are simply representing him

25   because his lawyer is out of town.

1          MS. HOLLIS:  Yes, ma'am.

2          THE COURT:  Why don't you sign it Susan B. James by

3     Debra Hollis, with authorization, and I will affirm on the

4     record that he agrees to have you stand in for her on this

5     proceeding. Has he already signed the consent?

6          MS. HOLLIS:  He has.  I didn't know how to sign it

7     because I didn't know how you preferred to have it done.

8          THE COURT:  That's fine, thank you.

9          (Pause)

10         THE COURT:  For the record, I believe that the Court

11    was advised that Ms. Susan G. James, the counsel of record

12    for Adrian Moultry whose case will be called now, United

13    States of America versus Adrian Moultry, criminal case

14    03-00267, is unavailable today, could not reconcile a

15    conflict that has her out of town. The Court thus has

16    authorized Debra Hollis to stand in for Ms. James and will

17    ascertain on the record the Defendant's consent as well. The

18    Defendant will raise his right hand to be sworn.

19         THE CLERK:  You do solemnly swear or affirm that the

20    testimony you give in this cause to be the truth, the whole

21    truth, and nothing but the truth, so help you God.

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  The government is represented in this

24    proceeding by Assistant U.S. Attorney Matthew Miner. Good

25    morning, Mr. Moultry.

1          THE DEFENDANT:  How you doing, Your Honor?

2          THE COURT:  All right. We have talked before.  I

3     need you to speak into that mic and keep your voice up so

4     that we can record everything you say accurately. Your lawyer

5     who has represented you before this Court is Susan James; is

6     that correct?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  And she is not here today, you knew that

9     she wouldn't be here?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  She notified the Court that she had to

12    be out of town and asked the Court's permission to have Ms.

13    Debra Hollis stand in. Do you hereby consent to have Ms.

14    Hollis stand in at this proceeding as well?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Now, before, though, you authorized Ms.

17    James to have someone else stand in, you had an opportunity,

18    did you, to review everything with her and you authorized her

19    to talk with the government's lawyer to come up with the plea

20    agreement that's been presented to the Court?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  All right, then. Now, it's important for

23    you to understand the questions being asked of you today, and

24    as I have told you when you have appeared before me before,

25    if I say something that you don't understand you just stop me

1   and ask that I repeat it or rephrase it sufficiently until

2   you do understand it. How old are you?

3           THE DEFENDANT:  22.

4           THE COURT:  How far did you go in school?

5           THE DEFENDANT:  8th grade.

6           THE COURT:  Did you get a GED?

7           THE DEFENDANT:  No, ma'am.

8           THE COURT:  That's something you need to put on your

9   agenda when you are in custody.

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  There's no excuse for you not to get it,

12  you will be given an opportunity to do so.

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  Have you been treated recently for any

15  mental illness or any addiction to narcotic drugs?

16          THE DEFENDANT:  No, ma'am.

17          THE COURT:  Are you currently under the influence of

18  any drug, medication or alcoholic beverage of any kind?

19          THE DEFENDANT:  No, ma'am.

20          THE COURT:  Before today had you received a copy of

21  the indictment returned against you on November 20, 2003,

22  that is, the piece of paper resulting from the grand jury's

23  indicting you or charging you with various drug and gun

24  violations?

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  And you had a chance, didn't you, to
2   review that with Susan James, to have her discuss it with you
3   and explain it to you?
4          THE DEFENDANT:  Yes, ma'am.
5          THE COURT:  Are you satisfied with the advice and
6   the lawyering you have gotten from Ms. James in this case?
7          THE DEFENDANT:  Yes, ma'am.
8          THE COURT:  All right, sir. And before -- let me ask
9   you this, did you authorize Ms. James to talk with Mr. Miner,
10  the government's lawyer, in an effort to come up with the
11  plea agreement that you signed?
12         THE DEFENDANT:  Yes, ma'am.
13         THE COURT:  And before you signed it did she explain
14  it to you and help you understand it?
15         THE DEFENDANT:  Yes, ma'am.
16         THE COURT:  When you signed it did you believe that
17  you did understand it?
18         THE DEFENDANT:  Yes, ma'am.
19         THE COURT:  And nobody forced you to change your
20  plea from not guilty to guilty, that is, to come here today
21  for that purpose, and nobody forced you to sign that plea
22  agreement; is that correct?
23         THE DEFENDANT:  Yes, ma'am.
24         THE COURT:  You understand that everything in the
25  plea agreement represents all that the government has agreed,

1    there is no side agreement Mr. Miner has reached with Ms.
2    James and there's no verbal agreement, you understand that
3    everything is in writing that represents what the government
4    says it will do and what the government expects you to do.
5                THE DEFENDANT:  Yes, ma'am.
6                THE COURT:  Now, I am going to have Mr. Miner simply
7    highlight or summarize what the government expects you to do
8    and what the government will do in return. You listen
9    carefully because I am going to be reviewing the plea
10   agreement to make sure that it is consistent, and if there's
11   anything left out or anything you don't understand I am going
12   to give you the opportunity to tell me that. Mr. Miner.
13               MR. MINER:  Yes, Judge, this is an agreement under
14   Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.
15   In exchange for Mr. Moultry's plea of guilty to counts one
16   through three of the indictment the government will agree
17   that Mr. Moultry should get three levels of reduction for
18   acceptance of responsibility. The government will agree that
19   the low end of the applicable guideline range is
20   appropriate.  And in this case, Judge, because of the nature
21   of Mr. Moultry's offenses there isn't a specific guideline
22   level, he is literally off the charts in a different part of
23   the book, so the government wanted to make sure to put the
24   exact amount of months, what the low end with acceptance
25   would be.

8

1        THE COURT:   And what would that be?

2        MR. MINER:   Two hundred 62 months. There's also a

3   cooperation agreement here, Judge. And so in addition to

4   agreeing to the low end and the two hundred 62 months the

5   government will agree to a reduction in Mr. Moultry's offense

6   level and sentence if he cooperates in this case.

7        THE COURT:   Will that be a reduction below the two

8   hundred 62 months?

9        MR. MINER:   That is correct, Judge.  And I made sure

10  to put in addition to the information going in that

11  provision, and, of course, cooperation.  Looking forward it's

12  not exact, we can't determine exactly how much it would be,

13  but I want for Mr. Moultry to understand that two hundred 62

14  months is the starting point.  So if the government makes a

15  motion in the future for 25 percent off of that, he can do

16  the math. If the government makes a motion for 50 percent off

17  of that he can do the math and know exactly what the

18  government is moving for.

19        THE COURT:   Mr. Moultry, I want to be sure that you

20  understand this. Mr. Miner has recited the essence of the

21  agreement.  You are charged in three counts on this

22  indictment. You understand that?

23        THE DEFENDANT:   Yes, ma'am.

24        THE COURT:   You are expected to plead guilty to all

25  three counts.

1         THE DEFENDANT:  Yes, ma'am.

2         THE COURT:  The government is going to recommend

3  that there be a three level reduction in the sentencing

4  guidelines that would apply. The government is saying today

5  that the low end that it's going to recommend, the low end of

6  those guidelines would be two hundred 62 months; is that

7  correct, Mr. Miner?

8         MR. MINER:  That's correct, for acceptance.

9         THE COURT:  That is the low end. Now, in addition,

10  your plea agreement -- is it there before him?

11         MS. HOLLIS:  I do not have a copy.

12         MR. MINER:  I have a copy, Judge.

13         THE COURT:  Show him a copy of the plea agreement

14  just for my purposes of making sure he follows along with me.

15  Your plea agreement at page seven includes what is called a

16  cooperation agreement. Ms. James has discussed with you that

17  the government expects you to cooperate fully and testify

18  truthfully against other persons about whom you may have

19  knowledge and to cooperate fully with reference to that

20  knowledge at grand jury or trial. And the government details

21  at page seven, going over to eight and nine what is expected

22  of you. And if you cooperate -- and, of course, they decide

23  whether you are cooperating properly and fully -- if you do,

24  the government agrees to make further recommendations, and

25  they will reduce that low end.  The low end is already two

1    hundred 62 months. If you do what you are committing to do,

2    what Ms. James has explained to you, the government expects

3    you to do, the government is saying there's a possibility

4    that your sentence will be even lower than two hundred and 62

5    months. Have I stated that correctly, Mr. Miner?

6           MR. MINER:  That's correct, Your Honor.  As a matter

7    of fact, the government agrees if he cooperates the

8    government will move for that.

9           THE COURT:  The government will actually make a

10   motion for further reductions in your sentence from the low

11   end.  Is that the way you understood from your own lawyer's

12   explanation?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  And you understand from your own

15   lawyer's explanation that you are to plead guilty to all

16   three counts.

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  You understand that as part of your

19   commitment, in addition to pleading guilty to all three

20   counts, you are giving up the right to make an appeal from

21   your conviction and sentence. You understand that?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  You won't be able to go in prison and

24   decide I want to appeal this to a higher court, I want to

25   attack it, directly or indirectly, unless, of course, it has

1    to do with any misconduct by the government or any

2    ineffective assistance by your lawyer, that's part of your

3    commitment.

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  All right, sir.  Now, the government is

6    talking about sentencing reductions, I want to be sure that

7    you understand that these sentencing guidelines, as he had

8    said, they are off the chart now, but really we don't know

9    what guidelines will apply in your case today. Mr. Miner and

10   Ms. James have discussed this and they have given you the

11   benefit -- your lawyer has given you the benefit of her best

12   knowledge based on what she knows today. After today the

13   probation office will actually conduct a full presentence

14   investigation. They are going to talk with you, they are

15   going to gather information about your history and background

16   and this crime, they are going to read and relate to the

17   books that have these guidelines, then they will set the

18   specific guidelines that will apply. Only then will you

19   actually know what they are.  But the government has

20   committed today that the low end is two hundred and 62

21   months. That will not change; is that correct, Mr. Miner?

22             MR. MINER:  No, Judge, it should not change at all,

23   if it does and the Court finds, he would be entitled to

24   withdraw his agreement.

25             THE COURT:  Exactly. And while Mr. Miner has brought

1   up the matter of you withdrawing your guilty plea I will

2   explain that right. It's also stated in your plea agreement.

3   This is a plea agreement under Rule 11(c)(1)(C).  All that is

4   is a particular rule in our federal rule book that applies to

5   criminal procedure. Now, the impact of that rule, Mr.

6   Moultry, is simply this, if the District Court decides not to

7   follow what the government has recommended, you will get a

8   chance to take back or withdraw your guilty plea. Understood?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  And, of course, if you don't withdraw it

11  you have to suffer the consequences, and the consequences

12  include the possibility that the District Judge can enter a

13  sentence that's harsher than you expect. Now, you will be

14  pleading guilty to felonies. Each of these counts, one, two

15  and three, represents a felony as opposed to a misdemeanor.

16  When you are convicted of a felony you lose the right to have

17  possession of a firearm at all. You understand that?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  You lose the right to vote, you lose the

20  right to serve on a jury or to hold a public office. Need to

21  make sure you understand what the maximum punishment is on

22  these counts. For the first count, which charges you with

23  possession with intent to distribute controlled substances,

24  that's a violation of 21 U.S.C. 841(a)(1), here's the

25  maximum: Not less than five years but not more than 40.

1   That's in prison. A fine of not more than two million

2   dollars. The Judge has the authority to set a fine and time

3   in prison. Supervised release is not less than four years.

4   Each count carries with it this hundred dollar assessment fee

5   that operates like a court cost. Understand?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  The second count charges you with

8   possession of a firearm as a convicted felon. That's a

9   violation of 18 U.S.C. Section 922(g)(1). Here's the maximum

10  punishment that goes with that. Not less than 15 years in

11  prison nor more than life. That is, between 15 and life is

12  the prison term. A fine of not more than two hundred and 50

13  thousand dollars, or, both the fine and prison term. The

14  supervised release is not more than five years. Mr. Miner, is

15  that punishment correctly stated for 922(g)(1)?  Is it

16  enhanced because of count one?  Is that the reason it differs

17  from the penalties stated for Mr. Spurlock for the same

18  violation?

19          MR. MINER:  It's actually enhanced because of his

20  criminal history report.

21          THE COURT:  I see. That's fine, I just want to make

22  sure it's stated accurately, and you have affirmed that it

23  is.

24          MR. MINER:  Yes, Judge.

25          THE COURT:  Anything you don't understand about the

1    punishment that would apply in your case for being a

2    convicted felon in possession of a firearm?

3            THE DEFENDANT:  No, ma'am.

4            THE COURT:  The third count is one that charges you

5    with using, carrying or having a firearm in relation to the

6    drug trafficking crime that's charged for count one. That's a

7    violation of 18 U.S.C. Section 924(c)(1)(A).  The maximum

8    sentence there is not less than five years, but not more than

9    life, or a fine of not more than two hundred 50 thousand

10   dollars, or both the fine and the time in prison, and

11   supervised release of not more than five years. That's the

12   maximum possible punishment.

13           You are in Federal Court so if you receive prison

14   time you must understand that there is no parole any more in

15   federal -- in the federal system and you should expect to

16   spend that time. This thing called supervised release is the

17   period of time you spend subject to strict rules and

18   regulations, conditions imposed by the probation office. If

19   you violate those and you are found guilty of violating

20   those, please understand that it might mean more prison time.

21   I have already reminded that you have given up your right to

22   appeal and it's set forth in your plea agreement except under

23   the conditions I have told you.

24           I need now simply to remind you that when you walked

25   into court today you were in the status of not guilty. Thus,

1  that meant you were entitled to your trial by jury. At a

2  trial by jury it's the government that has the burden to

3  establish or to prove your guilt beyond a reasonable doubt.

4  You don't have the burden to prove your innocence. At a trial

5  by jury you have the right, first and foremost, to have a

6  lawyer continue to represent and defend you. If for any

7  reason you lost the ability to afford Ms. James, the Court

8  will consider your finances and make sure that you were

9  appointed competent counsel to continue representing you.

10          At a trial by jury you have got the right to be here

11  so that you could see and to hear the witnesses against you.

12  You have got a right to have this Court subpoena witnesses to

13  testify for you. You wouldn't have to do that at all, you

14  don't have any duty to put on any witnesses. You have got a

15  right to take the stand yourself and testify, but if you

16  chose not to do that Mr. Miner for the government couldn't

17  comment on that. That is a constitutional right that you

18  have. Understood?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Of course, if you change your plea from

21  not guilty to guilty it makes sense that you would no longer

22  have a trial by jury, would no longer have those rights.  You

23  do understand that, Mr. Moultry?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  All right.  Now, I need to be sure you

16

1  understand what it is the government would have to prove on

2  these counts if you did go to trial. First, they have charged

3  you with unlawfully possessing with intent to distribute

4  certain narcotics. The government has two things they would

5  have to prove. First, that you knowingly and wilfully

6  possessed, that is, had, the narcotics substance charged.

7  Number two, that you possessed the substance with the intent

8  to distribute it. Those are the two elements charged with the

9  offense of possession with intent to distribute illegal

10  substances; understood?

11           THE DEFENDANT:  Yes, ma'am.

12           THE COURT:  For the offense of being a convicted

13  felon in possession of a firearm the government first has to

14  show that you knowingly possessed a firearm or ammunition in

15  or affecting interstate commerce as charged in this

16  indictment. Got to prove secondly that before you possessed

17  it you had already been convicted in a court of a crime for

18  which the punishment was more than a year. That's what makes

19  it a felony offense. Those are the two elements of count two.

20           For count three you are charged with having, or

21  using or carrying a firearm in furtherance of the drug

22  trafficking crime that's indicated in count one. Three things

23  the government must prove. One, that you committed the drug

24  trafficking offense charged, that is, that you committed the

25  distribution offense charged in the indictment. Is there a

1   superseding indictment here?

2           MR. MINER:  No, Judge.

3           THE COURT:  I see that there's a reference to a

4   superseding indictment in count three, that's erroneous?

5           MR. MINER:  That is erroneous, Judge.

6           THE COURT:  The original should delete the adjective

7   superseding, I did not recall a superseding indictment in

8   this case.

9           MR. MINER:  There was not.

10          THE COURT:  So first the government has to prove

11  that you committed the offense charged in count one, which is

12  not -- it is an offense of possession with intent to

13  distribute and is it considered a trafficking offense. Number

14  two, that during and in relation to committing that offense,

15  or in furtherance of possessing the narcotics with intent to

16  distribute it, you possessed a firearm. That's the second

17  element. And number three, that you used, carried or

18  possessed it knowingly, that is, that you knew that you had

19  it. You understand?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Those are the three things the

22  government would have to prove. Take a second and delete that

23  superseding while I get ready to establish the factual basis.

24  And just initial in the original plea agreement.

25          MR. MINER:  And I apologize to the Court for that,

1 | Judge.

2 | THE COURT:  Thank you.

3 | MR. MINER:  (complies)  And Judge, would you like

4 | for the Defendant and Ms. Hollis as well to initial?

5 | THE COURT:  Please.

6 | THE DEFENDANT:  (complies)

7 | MS. HOLLIS:  (complies)

8 | THE COURT:  Now, Mr. Moultry, we have reached that

9 | point when I have got to hear from you directly. Now, you

10 | recognize that this Court has heard a lot about this case

11 | through your suppression hearing. I need you now to talk with

12 | me. And let me make sure you understand what I am about to

13 | do. I have already told you what it is the government has to

14 | prove. I have told you that you can stay on your plea of not

15 | guilt too and go to trial and let the government establish

16 | these elements. I cannot accept your plea of guilty unless I

17 | hear testimony that suggests to me or that indicates to me

18 | that the government would find you guilty, would be able to

19 | establish your guilt at trial; you understand what I am

20 | saying?

21 | THE DEFENDANT:  Yes, ma'am.

22 | THE COURT:  So what I am about to do now is ask you

23 | to tell me what happened and what happened on May 31, 2003

24 | that makes you come here today wanting to plead guilty.

25 | First, I need to know if before you got involved in this

19

1    federal case you had been convicted in any other court of any

2    felony, understanding that a felony is an offense for which

3    you could have been punished by prison time for more than a

4    year.

5        THE DEFENDANT:  Yes, ma'am.

6        THE COURT:  Tell me what offenses you remember being

7    convicted of and when you were convicted.

8        THE DEFENDANT:  Burglary third, ten counts of

9    burglary third.

10        THE COURT:  Ten counts of burglary in the third

11    degree, and what court was that?

12        THE DEFENDANT:  In the state court.

13        THE COURT:  In Pike County, was it?

14        THE DEFENDANT:  Yes, ma'am.

15        THE COURT:  And you acknowledge or you know that all

16    of those were burglary cases for which the punishment was

17    more than a year.

18        THE DEFENDANT:  Yes, ma'am.

19        THE COURT:  And you knew, didn't you, that once you

20    were convicted of those burglary counts you were not supposed

21    to be in possession of a firearm.

22        THE DEFENDANT:  Yes, ma'am.

23        THE COURT:  Now, I am going to shift, and I am going

24    to shift to the date that's referenced in the government's

25    indictment, May 31, 2003 in Troy, Alabama. I want you to tell

1   me where you were when you had any contact with law

2   enforcement and what you had in your possession that's the

3   subject of this case today.

4            THE DEFENDANT:  I was at the Waffle House in Troy.

5            THE COURT:  Waffle House in Troy?

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  How did you get there?

8            THE DEFENDANT:  Drove.

9            THE COURT:  You were driving?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT:  What kind of car?

12           THE DEFENDANT:  A Chevrolet Caprice.

13           THE COURT:  And tell me more, tell me what happened

14   and what was found in your possession.

15           THE DEFENDANT:  My tag number was called in from the

16   club saying it was an altercation at the club, somebody had a

17   firearm, and I was stopped at the Waffle House and asked to

18   search the car, and during the search they found a firearm up

19   under the driver's seat.

20           THE COURT:  What was the firearm they found under

21   the driver's seat, what kind of weapons?

22           THE DEFENDANT:  A Bryco Arms nine millimeter.

23           THE COURT:  You were driving the vehicle?

24           THE DEFENDANT:  Yes, ma'am.

25           THE COURT:  This firearm was under your driver's

1  seat?

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  And you knew it was there.

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  Okay. What else did they find?

6           THE DEFENDANT:  A substance, crack cocaine.

7           THE COURT:  Was it more than 17 grams?

8           THE DEFENDANT:  No, ma'am.

9           THE COURT:  About how much was it?

10          THE DEFENDANT:  17 grams.

11          THE COURT:  All right. So it was about 17 grams.

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Could have been more, you didn't weigh

14  it.

15          THE DEFENDANT:  No, ma'am.

16          THE COURT:  All right.  Where was that found?

17          THE DEFENDANT:  In the driver's side door.

18          THE COURT:  You knew it was there.

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  How was it packaged?  Was it loose, in

21  bags or what?

22          THE DEFENDANT:  In a sandwich bag.

23          THE COURT:  Making it easy for you to distribute it?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  And was that your intention that day, is

1    that why you had it?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  You know what distribute means, you were

4    planning to either sell it or give it away.

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  You had them broken down into smaller

7    bags, what do they call those bags?

8              THE DEFENDANT:  Grams.

9              THE COURT:  Grams. Have you heard them called

10   cookies as well?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  Now, why did you have the gun there? Did

13   you have some concern about whether you might be attacked or

14   you just had it there for security while you were

15   distributing this coke?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  And you knew that it was there.

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  The government charges that this was a

20   gun that in essence traveled in or was somehow involved in

21   interstate commerce. Your lawyer is not here, what would the

22   proffer be for that, Mr. Miner?

23             MR. MINER:  The proffer would be, Judge, that the

24   interstate nexus expert in this case, a man by the name of

25   Frank Elliott who works for the Bureau of Alcohol, Tobacco

1    and Firearms, examined the Bryco firearm and its serial

2    number and concluded that model of Bryco firearm was not

3    manufactured in the State of Alabama at all and therefore in

4    order for it to be in the State of Alabama it had to cross

5    state lines and travel in interstate commerce.

6            THE COURT:  All right. Mr. Moultry, the indictment

7    refers to the fact that this firearm has to be one that was

8    in or affecting interstate commerce. That interstate commerce

9    phrase simply means did it come into the state from some

10   other state, from some other place. And the government would

11   be able to establish that this particular weapon that you

12   have described, the nine millimeter semiautomatic pistol,

13   Bryco Arms, was not made in the State of Alabama. Thus, they

14   would be able to establish that it had to have come in, that

15   means it was affecting or traveling in interstate commerce.

16   You understand that?

17           THE DEFENDANT:  Yes, ma'am.

18           THE COURT:  And you don't have any evidence that

19   would dispute that this weapon was made -- was not made in

20   Alabama.

21           THE DEFENDANT:  No, ma'am.

22           THE COURT:  All right. And you are satisfied, Ms.

23   Hollis, with the government's proffer, you would, on behalf

24   of Ms. James, stipulate that the firearm was in or affecting

25   interstate commerce?

1           MS. HOLLIS:  Yes, ma'am.

2           THE COURT:  Now, this incident you referred to, you

3    said the Waffle House, was that located in or about Troy,

4    Alabama?

5           THE DEFENDANT:  In Troy.

6           THE COURT:  And Troy is in Pike County.

7           THE DEFENDANT:  Yes, ma'am.

8           THE COURT:  And this all happened on May 31, 2003,

9    that is, when you had the encounter with law enforcement you

10   have told me a gun was found under the seat, the crack

11   cocaine was found packaged in baggies in the front driver's

12   seat, all of this was at the same time.

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  All right. Mr. Miner, is the government

15   satisfied or do you desire any further questioning?

16          MR. MINER:  The government is satisfied, Your Honor.

17          THE COURT:  Thank you very much, Mr. Miner. Now, Mr.

18   Moultry, is there any question you have before I ask you if

19   you are ready to change your plea, that is, anything you have

20   not understood, anything you need further clarification of?

21          THE DEFENDANT:  No, ma'am.

22          THE COURT:  Are you now ready to enter a plea which

23   is different from the plea you had previously entered?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  What is that plea?

1            THE DEFENDANT:  Guilty.

2            THE COURT:  All right, sir.  Your plea of guilty is

3    now recorded on this record. The Court is satisfied from

4    engaging you in testimony, and therefore I am going to make

5    the following findings in your case: I find that you, Adrian

6    Moultry, are fully competent and capable of entering an

7    informed plea. I also find that you are aware of the nature

8    of the charges against you in these three counts in the

9    indictment. I find that you are aware of the consequences of

10   the plea. In other words, that you have understood while I

11   have explained to you the impact, the result of pleading

12   guilty. I find that this plea of guilty is supported by a

13   knowing and voluntary -- in other words, that it is supported

14   by an independent basis in fact based on your testimony as to

15   what happened in Troy in May, 2003.  And I further find that

16   you are voluntarily entering the plea and that you know what

17   you are doing. Therefore, as the Magistrate Judge I am going

18   to recommend that the District Judge accept your plea and

19   find you guilty based on your plea of guilty today.

20            What happens now is the preparation of your

21   presentence report. The probation office will do that. They

22   will conduct a comprehensive investigation into your family

23   history, your criminal history, the facts about this case,

24   everything that's relevant to those sentencing guidelines.

25   Only then will we know exactly what those guidelines are. You

1   will get the report as will your lawyer. Your lawyer and you
2   will have a chance to read it and to decide if you want to
3   file any objections to things that may be in the report,
4   facts that you may disagree with it. You will have a right to
5   file objections. Judge Thompson will sentence you. Before you
6   are sentenced he will ask you if there's anything you want to
7   say. He will ask your lawyer if there's anything she wants to
8   say, so you will both have a chance to be heard.  Your
9   sentencing date will be about 60 to 70 days from today, I
10  don't know the exact date, but your lawyer will get notice.
11  Do you understand that?
12            THE DEFENDANT:  Yes, ma'am.
13            THE COURT:  Do you have any questions at all, sir?
14            THE DEFENDANT:  No, ma'am.
15            THE COURT:  You are presently in custody, any
16  question about release?
17            MR. MINER:  No, Judge.  As a matter of fact he is
18  borrowed on a writ so I believe we couldn't release him even
19  if we wanted to.
20            THE COURT:  Thank you very much. That means you are
21  going to go back to the custody of the United States Marshal
22  until your sentencing or until the time that the government
23  needs your cooperation pursuant to this agreement and makes
24  arrangements for your release for that purpose. Anything
25  else, Mr. Miner?

1          MR. MINER:   Nothing from the government.

2          THE COURT:   Ms. Hollis, thank you very much for

3     standing in for Ms. James. Thank you very much, Mr. Moultry.

4     The Court is adjourned.

5          (At which time, 11:30 a.m., the hearing was

6     adjourned.)

7                    *    *    *    *    *

8          I certify that the foregoing is a correct transcript

9     from the record of proceedings in the above-entitled matter.

10    This the 27th day of July, 2004.


12                              _____
                                Official Court Reporter