IN THE UNITED STATES DISTRICT COURT
FOR
THE MIDDLE DISTRICT OF ALABAMA


THE UNITED STATES
OF AMERICA

    vs.

ADRIAN MOULTRY

CRIMINAL ACTION NO.
2:03-cr-267-MHT




CONTINUATION OF
SENTENCING PROCEEDINGS (FROM 2/4/05)



\* \* \* \* \* \* \* \* \* \*


BEFORE:      The Hon. Myron H. Thompson

HEARD AT:    Montgomery, Alabama

HEARD ON:    February 10, 2005

APPEARANCES:  Matthew Miner, Esq.
              Susan G. James, esq.

Page 2

```
 1        T A B L E   O F   C O N T E N T S

 2

 3   ITEM DESCRIPTION                        PAGE NO.

 4

 5   Title Page .................................    1

 6   Table of Contents ..........................    2

 7   Preliminary Discussion .....................    3

 8   Adrian Moultry - Direct Examination
         by Ms. James ..........................   44
 9
     Larry Hubbard - Direct Examination
10        by Ms. James ..........................   51

11   Larry Hubbard - Cross Examination
          by Mr. Miner ..........................   53
12
     Larry Hubbard - Redirect Examination
13        by Ms. James ..........................   54

14   Larry Hubbard - Recross Examination
          by Mr. Miner ..........................   55
15

16

17

18

19

20

21

22   Court Reporter's Certification .............   97

23

24

25                    -o0o-
```

Page 3

```
 1   WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE
     THE HON. MYRON H. THOMPSON ON THE 10TH DAY OF FEBRUARY
 2   2005 AT THE UNITED STATES COURTHOUSE IN MONTGOMERY,
     ALABAMA:

 3

 4           PRELIMINARY DISCUSSION:

 5        THE COURT: This is a continuation in the
 6   case of United States vs. Adrian Moultry, criminal
 7   action number 2:03-CR-267.
 8        Now, Ms. James, where did we leave off?
 9        MS. JAMES: Judge, we were -- Mr. Moultry
10   had testified, and the Court was considering the
11   application of career offender and armed career
12   offender. We really don't have any further evidence
13   or argument to offer, but I have been in consultation
14   with Mr. Miner and I think he probably can articulate
15   what -- where we think we are better than I can. I've
16   objected to the Court's application of armed career
17   offender and career offender.
18        If you rule against me on the armed career
19   offender, I think we're in agreement where we should
20   be otherwise. So would you hear from him briefly?
21        THE COURT: Armed career offender, you're
22   talking about the statutory provision?
23        MS. JAMES: Well, but it does have a
24   carryover to the guidelines, Your Honor.
25        THE COURT: I understand that, but we're
```

Page 4

```
 1   talking about statutory or the guidelines?
 2        MS. JAMES: We pled guilty to the statutory
 3   provisions, so we're guilty -- I mean, we've admitted
 4   that, but we still are objecting to the application of
 5   the armed career offender as applied under the
 6   guidelines.
 7        THE COURT: Let me just get an understanding
 8   when you said you've pled guilty to the statutory
 9   provision. What provision in the statute did you
10   plead guilty to?
11        MS. JAMES: 924(e), Your Honor.
12        THE COURT: You actually pled guilty to
13   924(e)?
14        MS. JAMES: Yes, sir.
15        THE COURT: And not 924(g) -- um, 922(g)?
16        MR. MINER: Your Honor, if I could explain?
17   The elements for 924(e) were satisfied through the
18   plea. He pled guilty to the 922(g)(1) offense, which
19   is a felon in possession of a firearm that traveled in
20   interstate commerce, and as well admitted that he had
21   ten prior burglary convictions that were set out in
22   the indictment in the plea agreement and then he
23   admitted on the record that he had been convicted on
24   ten separate counts of burglary during the plea
25   colloquy. So the factual elements were satisfied,
```

Page 5

```
 1   Your Honor.
 2        MS. JAMES: That's correct.
 3        THE COURT: Now was he intending to plead to
 4   924(e), though, those penalty provisions?
 5        MR. MINER: Your Honor, the plea colloquy
 6   expressly mentions the two hundred and sixty-two month
 7   sentence that the United States has set forth. And I
 8   can go through the plea colloquy, but yes, Your Honor,
 9   it was explained to him that the penalty was high for
10   just that reason.
11        MS. JAMES: We understood that, Your Honor.
12        THE COURT: You understood what, now?
13        MS. JAMES: We understood the ramifications
14   of the plea.
15        THE COURT: So he was pleading guilty to
16   actually not just 922(g) but 924(e) as well.
17        MS. JAMES: Yes, Your Honor.
18        THE COURT: The specific penalty there. And
19   that was part of your plea agreement?
20        MS. JAMES: Yes, sir.
21        THE COURT: All right. Now what happens
22   now?
23        MR. MINER: Yes, Your Honor. Miss James
24   asked me to basically explain where we're at I think
25   in terms of the core of the dispute, and I think we're
```

Page 6

1 between the Government's recommendation of two hundred
2 and sixty-two months which is based upon the career
3 offender guideline, and as explained last week the
4 course through sentencing guideline --
5      THE COURT: What guideline are we talking
6 about?
7      MR. MINER: 4B1.1, Your Honor, which sets
8 out the table for that. And that gets into the
9 relatedness issue for the prior convictions.
10     THE COURT: 4B1.1.
11     MR. MINER: Yes, Your Honor.
12     THE COURT: Okay.
13     MR. MINER: To be a career offender, the
14 defendant had to be at least eighteen years old at the
15 time the defendant committed the instant offense
16 conviction; that's not in dispute.
17     THE COURT: Where are you reading from now?
18     MR. MINER: From 4B1.1(a).
19     THE COURT: Yeah, okay, I see it. It
20 eighteen years old.
21     MR. MINER: Yes, Your Honor.
22     Second, the instant offense of conviction is
23 a felony that was either a crime of violence or a
24 controlled substance offense. Your Honor, there are
25 two different violations that were pled to in this

Page 7

1 case that would qualify. There was a drug count that
2 involved possession with intent to distribute that
3 would qualify, as well as a possession of a firearm in
4 furtherance of a drug trafficking offense, which would
5 also be a crime of violence. So that would be
6 satisfied.
7      And then C is the point that is in dispute
8 as to 4B1.1, and that really is the core of the
9 dispute. The defendant has at least two prior felony
10 convictions of either a crime of violence or
11 controlled substance offense. And here the defendant
12 has ten prior burglary convictions. They are set out
13 in the presentence investigation report.
14     Under 4B1.1, Your Honor, to determine if
15 these are four convictions that should be counted
16 separately or together, you look to the way that
17 convictions are counted generally for criminal -- for
18 the criminal history score. And under the guidelines
19 the question is whether these are related convictions.
20 And that gets into a multiprong analysis where you
21 consider whether these are part of a single common
22 scheme or plan, whether they were consolidated for
23 trial or for sentencing. And I believe last week Your
24 Honor focused on the question of whether these
25 originated from a single common scheme or plan.

Page 8

1      Let me just lay out the difference between
2 the two provisions.
3      THE COURT: What do you mean, between what
4 two provisions?
5      MR. MINER: The career offender and the
6 armed career offender guideline. Because that was --
7      THE COURT: We're talking about two
8 different guidelines.
9      MR. MINER: Absolutely, Your Honor.
10     THE COURT: Where is the guideline provision
11 for armed career?
12     MR. MINER: Armed career offender, Your
13 Honor, which actually comes from the statute 924(e)
14 which is the statute that is related to the felon in
15 possession conviction, is found at section 4B1.1 of
16 the sentencing guideline.
17     THE COURT: That's where we're looking --
18     MR. MINER: 4B1.4, I'm sorry. I don't know
19 why I said 4B1.1, Your Honor, I apologize.
20     THE COURT: Okay.
21     MR. MINER: That section, as I said, is
22 driven by the statute which if you look at 4B1.4(a   )
23 states, "A defendant who is subject to an enhanced
24 sentence under the provisions of 18 U. S. C., Section
25 924(e) is an armed career criminal." I gave the Court

Page 9

1 a couple of cases last week, I believe it's the Pope
2 case and the Lee case, and those cases explained how
3 prior burglary convictions or prior convictions are
4 treated as being separately counted under the 924(e)
5 statute. It's a different analysis. And it is an
6 analysis that is less likely to count the -- or is
7 more likely to count the convictions as separate than
8 the guideline analysis of relatedness.
9      4B1.4, Your Honor, that guideline section
10 would put the defendant at an offense level of
11 thirty-one, because he would be at an offense level of
12 thirty-four because he used or possessed a firearm in
13 connection with either a crime of violence or a
14 controlled substance offense as set forth in 4B1.4(b)
15 (3)(a). And his criminal history category, Your
16 Honor, under 4B1.4(c)(2) would be a six for exactly
17 the same reason.
18     Looking at the guideline table, he should
19 receive three levels off for acceptance of
20 responsibility, Your Honor, and at a criminal history
21 category of six and an offense level of thirty-one,
22 the range is a hundred and eighty-eight months to two
23 hundred and thirty-five months. However, the statute
24 has a mandatory minimum sentence of fifteen years. He
25 also faces under Section 924(c) a five year mandatory

## Page 10

1 minimum sentence that must be consecutive to any other
2 sentence the Court imposes. Accordingly, the
3 defendant is looking at a two hundred and forty month
4 sentence as the statutory mandatory minimum sentence.
5      The United States would agree, Your Honor,
6 that if the career offender guideline does not apply
7 under the terms of the parties' plea agreement and as
8 it was contemplated by the parties, the defendant
9 should receive the minimum sentence that he should
10 have to receive under the law. So if the career
11 offender guideline does not apply, the United States
12 would agree that we're looking at a two hundred and
13 forty month sentence.
14      If the career offender guideline under 4B1.1
15 applies, in other words the Court finds that the
16 burglary convictions are not related, at least two of
17 them are not related, then we would be looking at a
18 different sentence of two hundred and sixty-two months
19 as the minimum sentence that the guidelines would
20 provide. And of course the guidelines are now
21 advisory, but just looking at that analysis --
22      THE COURT: Now say that again. Let me
23 follow that. Say those last two comments again. If
24 we're looking at -- if I decided that 4B1.4 applies
25 what, now?

## Page 11

1      MR. MINER: If it's 4B1.4, Your Honor, and
2 you find that 4B1.1, the career offender guideline,
3 does not apply, then the United States would agree
4 that an appropriate sentence would be two hundred and
5 forty months. Because I agreed in the plea
6 discussions, I agreed in the plea agreement to a low
7 end sentence.
8      The low end sentence, Your Honor, under the
9 statute, which would be what would be the lowest ·
10 sentence he could receive under the armed career
11 criminal guideline and statute, would be two hundred
12 and forty months. However, this is agreement was
13 contemplated -- and you can see in the agreement, at
14 least from the Government's side -- using the minimum
15 sentence set forth in 2B1.1, the career offender
16 guideline, which is two hundred and sixty-two months.
17      THE COURT: You mean forty-one months.
18      MR. MINER: I'm sorry, Your Honor, I don't
19 know why I keep tripping over my numbers.
20      And so that's really the essence of the
21 issue.
22      THE COURT: Okay. So if 4B1.4 applies,
23 we're looking at a minimum sentence of two hundred and
24 forty months.
25      MR. MINER: That's correct.

## Page 12

1      THE COURT: Okay. If 4B1.1 applies we're
2 looking at a minimum sentence of how many months?
3      MR. MINER: Two hundred and sixty-two
4 months, Your Honor. And I can take the Court through
5 that analysis.
6      THE COURT: Why are we looking at more under
7 4B1.1 than 4B1.4?
8      MR. MINER: That is correct, Your Honor.
9      MS. JAMES: No. Why?
10      MR. MINER: Oh, why? It's simply the fact
11 that he pled guilty to the possession of a firearm in
12 furtherance of a drug trafficking offense. The 924(c)
13 conviction. That puts him into a separate range of
14 the analysis under the career offender guideline than
15 if he had not been charged or had not pled guilty to
16 the statute.
17      THE COURT: Where is that?
18      MR. MINER: Well, Your Honor, under 4B1.1,
19 the section C discusses what happens if someone is
20 convicted of a Title 18 United States Code, Section
21 924(c) statute and the defendant is determined to be a
22 career offender under section A. And I mentioned what
23 the three elements for that would be.
24      THE COURT: Okay. Now which part of this C
25 what, now, is the applicable provision?

## Page 13

1      MR. MINER: (c)(3), Your Honor, would apply
2 because that's the career offender table that would
3 apply in this instance.
4      THE COURT: Right. And we're looking at
5 (c)(3) what?
6      MR. MINER: Your Honor it would be (c)(3) --
7 or (c)(2) would be the applicable --
8      THE COURT: I thought you said (c)(3).
9      MR. MINER: Well (c)(3) is the table, Your
10 Honor, that would apply.
11      THE COURT: Okay. (c)(2) --
12      MR. MINER: (c)(2) states that in the case
13 of multiple counts of conviction in which at least one
14 of the counts is a conviction other than a conviction
15 for Title 18 United States Code, Section 924(c), the
16 guideline range shall be the greater of, and there are
17 two different options. And he did plead guilty to
18 offenses other than Section 924(c).
19      (a) states the guideline range that results
20 by adding the mandatory minimum consecutive penalty
21 required by Section 924(c) to the minimum and maximum
22 of the otherwise applicable guideline range determined
23 for the counts of conviction. And, Your Honor, he's
24 in an entirely different area of the guidelines when
25 you --

Page 14

1    THE COURT: Okay. So he falls under (b)
2 under that?
3    MR. MINER: It would be (b), Your Honor.
4    THE COURT: And using the table in
5 subsection (c)(3)?
6    MR. MINER: Exactly, Your Honor.
7    THE COURT: And you're saying using that
8 table, what is it?
9    MR. MINER: It should be because the
10 Government has agreed that he should receive three
11 levels of reduction in his offense level for
12 acceptance of responsibility --
13    THE COURT: It would two hundred and
14 sixty-two months?
15    MR. MINER: Exactly. I agreed to a low end
16 sentence, and that does not change, Your Honor.
17    THE COURT: Okay. And if he's convicted
18 under or if I find that 4B1.4 applies, then the
19 guideline would be two hundred and forty months.
20    MR. MINER: Yes, Your Honor. Actually, the
21 guideline is lower, but because of the mandatory
22 minimum in this case that are stacked on top of each
23 other he cannot get lower than two hundred and forty
24 months. So that's really the essence of the dispute.
25    THE COURT: Is it possible for both

Page 15

1 guidelines to apply?
2    MR. MINER: It is possible, Your Honor. If
3 both apply, then at that point he would be facing the
4 two hundred and sixty-two month sentence.
5    I think that the argument as to the Armed
6 Career Criminal Act and Section 4B1.4 as discussed in
7 the Pope case and the Lee case that I provided last
8 week, I think it's much more clear, Your Honor, that
9 the defendant is an armed career criminal. Because of
10 the relatedness inquiry, and because of the nature of
11 the ten burglary convictions, I think it's a much
12 closer question as to whether he is a career offender
13 based upon -- and I'm try get this right, Your Honor,
14 I hope I'm not going to mess it up -- 4b1.1(a)(c), and
15 that deals with the two prior convictions of a crime
16 of violence.
17    As the testimony was last week, there were
18 ten different burglaries. They were over two days.
19 The defendant testified, and I have nothing to refute
20 this, that at the outset he and his friends decided to
21 go and break into a number of mobile home trailers.
22 Although his testimony was at points a little bit
23 inconsistent with some of the reports, it wasn't
24 materially inconsistent. I think at one point the
25 report said that they he had gone in through a window

Page 16

1 in one case, but he said they kicked in the doors in
2 all of them.
3    These were over two days. He was not
4 arrested during the commission of these ten different
5 robberies. It happened at the end. And the question
6 really is whether these ten burglaries can be deemed
7 part of a common scheme or plan. And looking at the
8 case law, and Your Honor went through a number of the
9 elements, there are factors that lean in favor of this
10 being a common scheme or plan. And that's the reason
11 why I'm saying it's a much closer question.
12    And this is from a Fourth Circuit case I
13 printed out this morning which is United States versus
14 Melton, M-e-l-t-o-n, 52 Federal Appendix 99, decided
15 in December of 2002. And the factors that are listed,
16 and this case did look at burglaries which is why I
17 pulled this case, whether the crimes were committed
18 within a short period of time, two days, Your Honor, I
19 think that is a short period of time; whether they
20 were committed in close geographic proximity, these
21 were all in Troy, albeit they were at different
22 trailer parks; involved the same substantive offense,
23 all ten resulted in the exact same substantive charge,
24 albeit in different cases; were directed at common
25 victims, these were different victims; assault during

Page 17

1 a criminal investigation --
2    THE COURT: What do you mean by "common
3 victim"? I don't know whether they mean the same
4 victim or just similar victims.
5    MR. MINER: No, Your Honor. I believe the
6 cases talk about how it has to be different victims.
7 That is what the Court is looking at.
8    THE COURT: I didn't know what the word
9 "common" meant, though. I didn't know whether
10 "common" meant similar or "common" meant the same. In
11 other words, it could be they were the same victim
12 that they're talking about, it would have to be the
13 same victim or it could be they're common victims in
14 the sense that they're trailer park people. So
15 arguably I don't know what the case is saying, but
16 that was just one of the definitions that I thought
17 were a little bit ambiguous.
18    But go ahead. I get your drift.
19    MR. MINER: And I've seen cases where, and
20 I'd need to look through the pile of cases, but one
21 case looked at that issue where there were a number of
22 different burglaries and different people -- this was
23 a very creative argument by the defendant which I
24 think illustrates how the "common victim" means
25 different folks, the defendant actually said I was

Page 18

1 breaking into all of these different places because I
2 was trying to get at one guy relating to drug
3 transactions. I thought that was basically a creative
4 argument. Basically here we're talking about
5 different residences, different people.
6        There was assault during the course of a
7 single criminal investigation. I think that's the
8 case here. I think the evidence points to the fact
9 that the Troy police solved these ten burglaries while
10 investigating them as they uncovered one burglary
11 after another. They share a similar modus operandi.
12 I think that, Judge, it's a similar modus operandi
13 whether you kick in the doors in nine cases --
14        THE COURT: It sounds to me like you're
15 essentially saying that he's not a career offender.
16        MR. MINER: I think that looking at this --
17        THE COURT: If we all agree to that, let's
18 just move on to the other provision.
19        MR. MINER: Well, Judge, I just wanted to --
20        MS. JAMES: May we speak together?
21        THE COURT: Yes.
22        (Whereupon, Ms. James conferred with Mr.
23 Miner off the record and out of the hearing of the
24 other courtroom participants.)
25        MR. MINER: Judge, I think that the career

Page 19

1 offender guideline favors Mr. Moultry's argument.
2        THE COURT: Let's move on, then, to the
3 armed career guideline. And let's talk about whether
4 that applies. That's 4B1.4.
5        MS. JAMES: Judge, I would like to --
6        THE COURT: I assume you don't want him to
7 fall under the career guideline.
8        MS. JAMES: Correct. But I think, rather
9 than take up a lot of the Court's time, I truly
10 believe that given the fact that we pled to the armed
11 career offender and in light of the case law that the
12 Government provided, that we would have a difficult
13 time prevailing on that particular issue. So I think
14 that I'm prepared to concede that, Your Honor, and in
15 the absence of the career offender application, which
16 we seem to be agreeing on, that we would have a
17 starting point, the statutory minimum which would be
18 two hundred and forty months. You may recall the
19 Government has --
20        THE COURT: So it seems like you're both
21 essentially agreeing to two hundred and forty months
22 as the minimum.
23        MR. MINER: Yes, Your Honor.
24        THE COURT: And now where do we go from
25 there?

Page 20

1        MS. JAMES: From there, the Government has
2 recommended, Your Honor, the four year reduction based
3 on substantial assistance. And they filed a motion.
4        THE COURT: And that would put him where?
5        MS. JAMES: I believe that would put him at
6 a hundred and ninety-two.
7        MR. MINER: Yes, Your Honor. I believe in
8 my sentencing memorandum I did the calculation under
9 both approaches, and a hundred and ninety-two months
10 would be forty-eight months off of the two hundred and
11 forty month sentence.
12        THE COURT: Are you telling me you both
13 agree to a hundred and ninety-two months, then?
14        MS. JAMES: Based on how things are standing
15 right now, yes, Your Honor.
16        THE COURT: So I have an agreement that it's
17 a hundred and ninety-two months.
18        MR. MINER: Yes, Your Honor.
19        MS. JAMES: Then we can get to our other
20 stuff which is our mitigation argument.
21        THE COURT: Oh, okay. Now you want to make
22 arguments about mitigating the hundred and ninety-two
23 months?
24        MS. JAMES: Yes, sir.
25        THE COURT: So we're talking about, then --

Page 21

1 Well what are your mitigation arguments?
2        MS. JAMES: Well, I think there -- As I
3 understand the process, Judge, in the case law that
4 I've seen from at least some other District Courts
5 because I haven't been before Your Honor for a
6 sentencing pursuant to Booker, is that the Court makes
7 the guideline assessment, and then either decides
8 whether it wants to accept or reject the guidelines
9 assessment.
10        THE COURT: What is the guideline assessment
11 here?
12        MS. JAMES: Based on the criminal history
13 score, if the two hundred and forty month minimum
14 mandatory were not applicable, the guideline range
15 based on what we agreed to, and I guess the Court has
16 adopted, the guideline range would be a hundred and
17 eighty-eight to two hundred and thirty-five months.
18        THE COURT: So a hundred and eighty-eight to
19 two hundred and thirty-five months would be the
20 guideline.
21        MS. JAMES: If we didn't have the minimum
22 mandatory.
23        THE COURT: Do you agree with that, Mr.
24 Miner?
25        MR. MINER: If the mandatory minimum

Page 22

1 sentence did not apply, that would the applicable
2 provision. But --
3          THE COURT: So the guideline range is a
4 hundred and eighty-eight to two hundred and
5 thirty-five months absent the mandatory minimum?
6          MR. MINER: Yes, absent the statutory
7 requirement that he receive two hundred and forty
8 months.
9          THE COURT: Right.
10         MS. JAMES: Yes, Your Honor.
11         THE COURT: So we agree now that the
12 applicable guideline range in the absence of the
13 mandatory minimum is one hundred and eighty-eight to
14 two hundred and thirty-five months. That the
15 mandatory minimum is two hundred and forty months, and
16 everyone agrees with the Government's motion with an
17 applied sentence of a hundred and ninety-two months.
18 So those are the three factors we can all agree on.
19         MS. JAMES: Right. But I think it's
20 relevant in terms of my mitigation argument why the
21 Court should -- what the Court should consider an
22 appropriate sentence, that if we, and I realize this
23 is if, if, if, that if we didn't have the minimum
24 mandatory, of course we get below the minimum
25 mandatory sentence through the Government's motion for

Page 23

1 a downward departure --
2          THE COURT: I'm Assuming you're not going to
3 ask me not to approve it.
4          MS. JAMES: No, sir. I'm asking you to do
5 that.
6          THE COURT: Right. Well, if I approve the
7 Government's motion then I'll virtually be right
8 within the guidelines.
9          MS. JAMES: That is correct, within that
10 range.
11         THE COURT: Right, one hundred and
12 eighty-eight to two hundred and thirty-five.
13         MS. JAMES: However, Judge, in mitigation
14 the Government agreed and they articulated here today
15 that they would recommend a bottom of the guidelines
16 decision in whatever category we fell in. And if we
17 were at the hundred and eighty-eight months, which
18 would be absent the armed career offender, is where
19 the Government -- I think you would agree you would
20 have recommended a hundred and eighty-eight month
21 sentence, am I correct?
22         MR. MINER: Well, we're starting to get into
23 sort of speculative territory, Your Honor.
24         THE COURT: Let me just ask you this. What
25 are you asking me for?

Page 24

1          MS. JAMES: Well --
2          THE COURT: What sentence do you suggest I
3 give?
4          MS. JAMES: Well, you know, obviously,
5 Judge, when I did my sentencing memo, my most recent
6 one, I did an analysis where we would start at a base
7 level of twenty-three and we're not there. So that's
8 kind of -- we didn't get there because of the
9 concession I made with the armed career offender. But
10 if the Court started at the bottom of the guidelines
11 decision in terms of frame of reference here at a
12 hundred and eighty-eight months, even if you did no
13 more for the defendant's cooperation than suggested
14 for the years the Government has proposed, that would
15 put us at a sentence of one hundred and forty months.
16 And I believe --
17         THE COURT: How do you get to one forty?
18         MS. JAMES: Well, if you took one
19 eighty-eight, and I think this is not obviously
20 binding on the Court but I think it's instructive that
21 the guideline range, absent -- because I clearly
22 believe that all of this overstates the seriousness of
23 this defendant's conduct. And I say "all of this,"
24 two hundred and forty months, one hundred and
25 eighty-eight months, because you've not --

Page 25

1          THE COURT: Is a hundred and eighty-eight
2 months minus four years a hundred and forty months?
3          MS. JAMES: Yes, sir.
4          THE COURT: Why would you want me to start
5 at a hundred and eighty-eight months and then subtract
6 four years? I don't understand the logic in that.
7          MS. JAMES: Well what I'm saying is, you can
8 consider -- In terms of mitigation, Judge, you can
9 consider anything that you want to now if you elect to
10 reject the guidelines. So what I'm saying is you make
11 your decisions over here. I'm just -- As a frame of
12 reference or a point to start, I'm saying that, number
13 one, I think that a hundred and ninety-two months
14 overstates the seriousness of this defendant's
15 conduct, even considering it in the most negative
16 light possible.
17         I indicated in my statement, in my pleading
18 that I filed yesterday, there was an altercation at a
19 bar in Troy and there was a "be on the look out for a
20 suspect vehicle." And that vehicle turned out to be
21 my --
22         THE COURT: How can you say that a hundred
23 and ninety-two months overstate the seriousness of the
24 offense once we are working from a mandatory minimum?
25 I mean, the seriousness of the offense is reflected in

Page 26

1 the mandatory minimum.
2       MS. JAMES: Well, Judge, but we entered this
3 plea of guilty with full expectation that the
4 Government would make the recommendation for the
5 downward departure. So it would -- There was just no
6 -- We never expected that we would get the minimum
7 mandatory because we had proffered before the plea was
8 given and it was clear that Mr. Miner was going to
9 recommend a downward departure. And we felt, or we
10 were hopeful that the Court would grant the same with
11 the Government's recommendation.
12       So while we pled guilty to that, it was
13 necessary to plead go guilty to that to get to where
14 we are today and to allow him to cooperate. That was
15 -- Candidly, facts were going to be difficult to
16 overcome --
17       THE COURT: All I'm asking, though, is you
18 made the comment that one ninety-two overstates or
19 even one eighty-eight overstates the seriousness of
20 the offense. And I'm asking how that can be in view
21 of overstating the seriousness of the offense, not his
22 cooperation, just the seriousness of the offense? I
23 haven't gotten into how I can come down from the
24 seriousness of the offense.
25       MS. JAMES: Yes, sir.

Page 27

1       THE COURT: But just the offense itself, how
2 can you say that what by statute Congress has said
3 that this offense carries a mandatory minimum of two
4 hundred and forty months?
5       MS. JAMES: Well, Judge, I may be not making
6 myself perfectly clear. I may be combining the two
7 arguments.
8       THE COURT: Now there is another argument
9 that he cooperated, and that means I can come off the
10 seriousness of the offense. I can come down.
11       MS. JAMES: Correct. And I'm assuming
12 that's part two, Judge. That being that was
13 overstating was part of my mitigation argument in
14 terms of where you should ultimately end up on the
15 sentence. I understand we have the twenty year.
16 Because I have it compartmentalized, I have twenty
17 years over here with a four year recommendation in
18 terms of where you are actually -- your frame of
19 reference, I would assume in terms of the guideline
20 calculations and application.
21       Then the way my brain is working, we shift
22 over after you've made those findings, and I think you
23 have, then we shift over to part two, and part two
24 being here's the minimum mandatory. Here's what the
25 guidelines are, what kind of sentence do I fashion for

Page 28

1 this defendant under the facts of this case. That's
2 why I say a sentence that high overstates the
3 seriousness of the criminal conduct in this case,
4 given how the facts unfold.
5       THE COURT: Go ahead, then.
6       MS. JAMES: Okay. Well what I'm saying,
7 Judge, is, and you're saying where do I go with the
8 sentence, at the very least I think based on the
9 argument that if the twenty year minimum mandatory did
10 not apply, we would be looking at guidelines one
11 eighty-eight to two-thirty five. And without adding
12 anything more than what the Government has just
13 suggested and recommended, if you took the forty-eight
14 months off of that you would be at a sentence of one
15 hundred and forty months. That still is a fairly
16 substantial sentence. I mean we're talking what, ten
17 years and twenty months?
18       THE COURT: I don't understand why I start
19 at one eighty-eight rather than two forty.
20       MS. JAMES: Well you don't. I'm just saying
21 that I think in the process you could, if you reject
22 the guidelines.
23       THE COURT: I'm not rejecting the
24 guidelines, I'm rejecting the mandatory minimum.
25       MS. JAMES: Right, but I think under Booker,

Page 29

1 Judge, that you, given that they're advisory -- I
2 mean, they're advisory, you can do whatever you want
3 to and I know you are aware of that and you've done
4 that probably --
5       THE COURT: I'm not sure I can do whatever I
6 want to, but in determining where to knock off the
7 four years, I still don't understand why I should not
8 knock off the four years from the mandatory minimum.
9 But let's say I reject the guidelines, I don't
10 particularly want to apply the guidelines here, the
11 guidelines -- just for sake of argument, the
12 guidelines just don't make sense to me in this case, I
13 still have a mandatory minimum here. And my question
14 is, why don't I knock off the four years from the
15 mandatory minimum?
16       MS. JAMES: That would be appropriate, but
17 then that doesn't preclude the Court from considering
18 my argument that -- For instance, I guess I'm telling
19 you how I'm getting to the hundred and forty months.
20       THE COURT: You told me not to apply the
21 guidelines, and if I say okay, I won't apply the
22 guidelines, but I still have the mandatory minimum
23 which I'd have to knock off four years.
24       MS. JAMES: Right.
25       THE COURT: So what can you tell me that

Page 30

1 suggests that I should go below a hundred and
2 ninety-two months? I've already gone below what
3 Congress said a should, and I'm not even going to
4 factor in the guidelines.
5        MS. JAMES: Well that's correct, Judge, but,
6 you know --
7        THE COURT: How does that help your client?
8        MS. JAMES: Prior to January the 12th,
9 that's exactly where we would be. We would be at two
10 hundred and forty months minus forty-eight months at a
11 hundred and ninety-two months.
12        THE COURT: Right. But because of the
13 mandatory minimum, the guidelines don't apply here.
14 And after January 12th I agree with you now, for the
15 sake of argument, that the guidelines don't apply. So
16 where are we? The only place I see where we are is a
17 hundred and ninety-two months.
18        MS. JAMES: Well maybe I'm not saying the
19 magic words, but I'm still saying to the Court that I
20 can't think you can do that under the case law that's
21 out there now and what Congress -- excuse me, what the
22 U. S. Supreme Court has said you can do. That does
23 not preclude you, however, from imposing a sentence of
24 going from two forty minus forty-eight to one
25 ninety-two. There is still room for the Court to give

Page 31

1 him something less.
2        THE COURT: Give me a reason for going below
3 a hundred and ninety-two, is all I'm asking you to
4 do.
5        MS. JAMES: Right. And what I'm saying,
6 Judge, is I think that we have a fellow who is being
7 -- We can't escape the ten burglaries, however they
8 were related and again it was over a two day period,
9 and he's getting a criminal history score of six as a
10 result of his prior criminal history, where he would
11 otherwise be, I believe, a base level of three. He's
12 also getting enhanced punishment because of the plea
13 of guilty to a 924(c), which is kind of interrelated.
14 I mean, we only had the one you firearm in the vehicle
15 so he got double punishment, if you will, and I think
16 in violation of the law. But it was the same weapon.
17        He got the 922, the felon in possession, and
18 then he got the 924 for the same weapon. We don't
19 have any evidence as far as the record before this
20 Court of drug sales. We have a relatively small
21 quantity of crack cocaine that was in the vehicle.
22 This was a law enforcement stop pursuant to something
23 really unrelated to drugs. It was an altercation at a
24 bar. In fact, they didn't stop him, actually he had
25 pulled you into a Waffle House and they came over to

Page 32

1 approach him.
2        THE COURT: Are you making an argument as to
3 why I should grant the Government's motion further
4 than what they're requesting?
5        MS. JAMES: No, Judge. I contemplated
6 possibly putting Mr. Hubbard on. He's with the D. E.
7 A and he's the person who had been working with Mr.
8 Moultry with regard to his assistance to the
9 Government. And I have spoken to him about it, and I
10 think they believe he's been truthful and forthright
11 but that some of the cooperation hasn't yet come to
12 fruition which might mean there might be some further
13 recommendation from the Government down the road. So
14 I don't think I'm in a position to argue with the
15 cooperation is so substantial that you should go
16 beyond the forty-eight months. I think Mr. Moultry
17 feels that way because I think he's given enough
18 information that has led to --
19        THE COURT: Well then I'm confused again.
20 Let me explain my confusion. We all agree, at least
21 you two agree, that we're looking at a mandatory
22 minimum of two hundred and forty months. I now have
23 before me a motion by the Government for a four year
24 reduction based on cooperation. That's the train
25 we're traveling on. The Government's motion for a

Page 33

1 four year reduction.
2        Is there any other basis to go below the
3 mandatory minimum of two hundred and forty months
4 other than the train the Government is traveling on,
5 which is cooperation and their request for four years?
6        MS. JAMES: Well, Judge, in my sentencing
7 memo I outlined, and this is page four, things that
8 the Court can consider under Title 18 U. S. C.,
9 Section 3553(a).
10        THE COURT: Can I consider those factors in
11 granting the Government's motion for a downward
12 departure based on cooperation?
13        MS. JAMES: No, sir.
14        THE COURT: Well that's the only train
15 that's in the station right now, isn't it?
16        MS. JAMES: Okay. So what you're saying is
17 we're not to that point yet.
18        THE COURT: I don't see how we're beyond
19 that point or to that point. All I see right now is
20 that you all you agree there was a two hundred and
21 forty month mandatory minimum. The Government has
22 filed a motion to reduce the sentence by four years.
23 As far as I can see, that's the only thing that's
24 before me. And the question is what can I consider in
25 addressing the Government's meetings? Do I consider

Page 34

1 only cooperation, or do you have an argument that I
2 consider other factors?
3          MS. JAMES: I apologize, Your Honor. I
4 think at that point where we are right there, that you
5 can only consider the cooperation.
6          THE COURT: Okay. Well, if you agree that
7 he's cooperated and the four years is it, then what's
8 the purpose of going any further in this proceeding?
9          MS. JAMES: I don't think there is anything
10 that would preclude you from going further.
11         THE COURT: What would allow me to go
12 further? What other factors would allow me to go
13 further? The only thing I'm looking at is a mandatory
14 minimum of two hundred and forty months and a motion
15 to go below that mandatory minimum. This is not a
16 clean slate. I'm not here to sentence him, you know,
17 under the guidelines, I'm here to sentence him
18 pursuant to the mandatory minimum and the Government's
19 request to go below that.
20         MS. JAMES: Judge, I don't think that there
21 is anything to preclude the Court from going below
22 that once the Government's motion is filed. Obviously
23 you could have chosen, if you wanted to grant the
24 Government's motion that gets us below the minimum
25 mandatory, then I think the Court is free to impose

Page 35

1 any sentence that the Court might want to impose. I
2 think it's instructive --
3          THE COURT: I can impose any sentence, even
4 though the basis of the motion is cooperation?
5          MS. JAMES: Well, I say "the basis of the
6 motion." I don't think -- I think the Court can
7 consider a lesser sentence, or I think the Court under
8 Booker can go lower. I don't think that there is
9 anything that says that this is simply a Government
10 motion --
11         THE COURT: How does Booker factor into a
12 motion for reduction based on cooperation? The motion
13 is before me based on cooperation. That's all I have
14 before me. Absent the motion, I have a mandatory
15 minimum. Booker doesn't indicate --
16         MS. JAMES: Well, I can see that I'm not
17 going to get very far.
18         THE COURT: I'm just trying to understand
19 your argument. It's not that you're not going to get
20 very far, I don't quite understand your argument, I
21 don't understand where you're pushing me.
22         MS. JAMES: I can't understand, Judge, and I
23 can tell you very simply that my argument is this, and
24 there is really no point in taking up a lot of the
25 Court's time with it. My argument is that if we start

Page 36

1 at two forty minus forty-eight months for cooperation,
2 and at that point the Court has the power, whether you
3 exercise it or not, but has the power to impose a
4 lesser sentence because we've gotten below the minimum
5 mandatory by the Government's motion. And that given
6 that, we are in a position to request the Court do
7 something less than the one hundred and ninety-two
8 months. At that point, I believe that you Title 18 U.
9 S. C., Section 3553(a) kicks in, and there are
10 specific points that are articulated there that the
11 Court can consider.
12         THE COURT: Let me ask you this. You're an
13 experienced criminal attorney. Let's say your client
14 cooperates after I impose sentence, and the Government
15 files a motion for an additional reduction, which I'm
16 sure you have had happen to your clients, and we bring
17 him back into court and reduce their sentence again,
18 can I then apply Booker and essentially, under Booker,
19 then give him any sentence I want to given them, even
20 though it may fall outside the evidentiary basis of
21 cooperation?
22         MS. JAMES: Well, Judge, you --
23         THE COURT: Which I may have. I have that
24 all the time. I have defendants parading before me
25 every day who have been sent off to prison, the

Page 37

1 Government files a motion to reduce their sentence,
2 and in those circumstances where the sentence is
3 reduced below the mandatory minimum, can I then use
4 Booker to give him whatever sentence I think is now
5 fair even though I couldn't have used Booker at the
6 time he was originally sentenced because of the
7 mandatory minimum?
8          MS. JAMES: Judge, I have to maintain a
9 consistent argument, and I have been before Your Honor
10 on a Rule 35 situation prior to Booker but post
11 Blakely where I made that very argument, that you
12 could do that. And I guess it all goes to just kind
13 of equity and fairness, and whether or not that would
14 work at the appellate level I don't know.
15         But I don't see anything, and I have not
16 found anything that particularly limits the Court's
17 power to impose whatever sentence it deems
18 appropriate. Now -- at that Rule 35 hearing.
19         And I understand what you're saying is -- I
20 think the landscape has obviously changed since June
21 24th of this year when Blakely was release and we've
22 had a lot of different things happen. And so rather
23 than foreclose an argument, I would maintain the
24 position that yes, the Court could entertain at that
25 Rule 35, the hypothetical Rule 35 that you referenced,

Page 38

1 that the Court could entertain these other factors.
2 Because you --
3      THE COURT: So your argument is essentially
4 that once the Government files a motion to go below
5 the mandatory minimum, it's wide open.
6      MS. JAMES: Yes, sir. And that would be my
7 position.
8      THE COURT: What's your response?
9      MR. MINER: Your Honor, I think the Eleventh
10 Circuit has foreclosed that argument in United States
11 vs. Aponte, 36 F.3d 1050. It's a 1994 case. And if I
12 may approach?
13      THE COURT: Right.
14      MR. MINER: I've already provided a copy to
15 Miss James.
16      (Whereupon, the Court examined said
17 document.)
18      THE COURT: What does it say?
19      MR. MINER: In Aponte, the defendant, in a
20 case where the Government had moved for a reduction in
21 sentence based upon -- or substantial assistance,
22 rather, and where there was a mandatory minimum
23 sentence the defendant argued that the District Court
24 should have disregarded the minimum mandatory sentence
25 altogether when it received the Government's motion,

Page 39

1 and that the Court should have looked to a lower
2 guideline level, should have considered mitigating
3 factors, and the Eleventh Circuit disagreed.
4      The Eleventh Circuit said in essence the
5 authority that the Court receive by statute is from
6 Title 18 United States code, Section 3553(e), which
7 provides the Court limited authority to impose a
8 sentence below mandatory minimum based upon the
9 substantial assistance of the defendant. And that is
10 what the Court should you consider.
11      Frankly, if the Court feels there isn't
12 enough substantial assistance to grant the motion or
13 the amount requested, I think the Court can give less.
14 And if the Court feels that I'm being particularly
15 stingy, I think the Court can give more. But I think
16 what the Court has to look at is the substantial
17 assistance, and that is the inquiry.
18      THE COURT: So that's the train, substantial
19 assistance. And I can't use anything else. I can
20 differ with you as to how much credit he should get
21 for it, but that's the only factor I can consider.
22      MR. MINER: That's correct, Your Honor. And
23 I'm willing to proffer to the Court, and I also have
24 the agent to let you know what has been done in this
25 case and what I see as being down the road.

Page 40

1      THE COURT: I understand, Ms. James, he
2 really doesn't take issue with the four years for
3 substantial assistance.
4      MS. JAMES: No, Your Honor. I mean Mr.
5 Moultry in probably, in fairness, he should probably
6 address the Court as to what he's done. Because I
7 know that he believes that his cooperation is worth
8 more than the four years recommended by the
9 Government.
10      The only thing I would point out in response
11 to the Aponte argument that the Government has made,
12 Judge, is that that was a 1994 case, almost ten years
13 after the Blakely decision. And quite frankly, I
14 think that it will be several years before we're all
15 going to know the interplay of Rule 35 and substantial
16 assistance and all of these things and how they work
17 under you the Booker decision.
18      And so my argument, I think, and I want to
19 make sure I preserve it for the record, and I guess
20 the question to the Court is if the Court chooses to
21 go the way that the Government has proposed that you
22 were leaning, and now the Government --
23      THE COURT: Well what's your argument
24 against Aponte?
25      MS. JAMES: Just what I just said. Because

Page 41

1 I think that --
2      THE COURT: Are you saying it's just wrong?
3      MS. JAMES: I'm saying that decision was
4 1994.
5      THE COURT: Right. You think Blakely
6 undermines it?
7      MS. JAMES: Yes.
8      THE COURT: Okay.
9      MS. JAMES: But what you I'm saying, Judge,
10 is I think it's important for --
11      THE COURT: But absent Blakely, you think I
12 can do this, what you want me to do in light of
13 Aponte?
14      MS. JAMES: Well, I don't want to sound
15 disingenuous, but I'm just being candid with the Court
16 about what I'm asking the Court to do. Obviously it
17 could be a wink and a nod, and you could, if you were
18 of a mind say well, I think this cooperation to the
19 Government, I think this cooperation credit is worth
20 eight years, not four years for the very reasons that
21 you --
22      THE COURT: Yeah, but I'm not going to do
23 that.
24      MS. JAMES: Right. But I think that could
25 happen --

Page 42

1    THE COURT: I mean I'm not going to do it
2 unless I actually believe it. I'm not going to do it
3 based on a wink and a nod.
4    MS. JAMES: Right. And that's why I was
5 trying to be candid with the Court.
6    THE COURT: Okay. I think I understand
7 where you are now.
8    So to summarize again, and you let me know
9 if I'm wrong, you both agree that the defendant has
10 plead guilty to Title 18 United States Code, Section
11 924(e), that is the penalty provision. You both agree
12 that 4B1.1 does not apply. You both agree that 4B1.4
13 does apply. And what Miss James now wants me to do,
14 or you both agree the Government's motion for downward
15 departure based on acceptance should be granted. The
16 Government is asking for four years. You agree that
17 the four years probably reflects the level of his
18 cooperation.
19    Where you disagree is that Miss James says
20 that in light of the Government's motion for downward
21 departure, the area of sentencing decision is wide
22 open and I can go back and consider all the factors in
23 3553(a) as it being the correct provision and give him
24 any sentence I want once the Government files that
25 motion, it appears that the mandatory minimum. The

Page 43

1 Government says instead that I am bound by Aponte,
2 which means I cannot consider the 3553(a) factors but
3 can only consider his cooperation.
4    Is that an accurate summary, Mr. Miner?
5    MR. MINER: Yes, Your Honor.
6    THE COURT: Is that an accurate summary,
7 Miss James?
8    MS. JAMES: Yes, Your Honor, with the
9 exception that I think Mr. Moultry probably should
10 address the Court with regard to that forty-eight
11 months. What I said was, you know, I'm allowing what
12 Mr. Miner has told me, but I know he feels like he
13 wanted to let the Court know what he has done and the
14 Court would be inclined to give him more than
15 forty-eight months.
16    THE COURT: Let me hear from him so that I
17 can now have everything before me and I know where we
18 are.
19    MS. JAMES: Do you want me to examine him?
20    THE COURT: Yes.
21    A D R I A N   M O U L T R Y,
22 the witness herein, having first been duly sworn or
23 affirmed to tell the truth, was examined and testified
24 as follows:
25    DIRECT EXAMINATION

Page 44

1    BY MS. JAMES OF THE ADRIAN MOULTRY:
2 Q State your name.
3 A Adrian Moultry.
4 Q Mr. Moultry, are you the defendant in this case?
5 A Yes, ma'am.
6 Q And have you and I had meetings -- or a meeting
7 with the Government with regard to your cooperation?
8 A Yes, ma'am.
9 Q At that point in time did you tell the Government
10 about matters involving drug activity that you were
11 aware of?
12 A Yes, ma'am.
13 Q And do you remember how long that particular
14 meeting lasted?
15 A Several hours.
16 Q Was that before or after you pleaded guilty?
17 A Before.
18 Q Okay. Tell the Court since that meeting where I
19 was present how many times you met with the
20 Government, and basically without giving any names or
21 things of that nature, kind of an overview of what you
22 have done for the Government and what if anything has
23 resulted from your efforts.
24 A Like three other times.
25 Q Did you meet -- Have you actually initiated

Page 45

1 contact with the Government? And let me ask this
2 gentleman sitting back here you were dealing with?
3 A Yes, ma'am.
4 Q And what's his name?
5 A Larry Hubbard.
6 Q Where does he work?
7 A D. E. A.
8 Q Have you initiated contact with him in order to
9 provide additional information beyond that that we
10 discussed?
11 A Yes, ma'am.
12 Q And to your knowledge has that information been
13 helpful to the Government?
14 A Yes, ma'am.
15 Q Has the fact that you have cooperated with the
16 Government in giving names and information about
17 others involved in the drug business, has that
18 personally caused you any problems?
19    (Whereupon, the witness paused.)
20 Q Do you understand what I'm saying?
21 A No.
22 Q I'm saying have you had any kind of -- Do people
23 know you're cooperating?
24 A In ways.
25 Q Okay. Has you your family had any problems since

Page 46

1 the result of your cooperation?
2 A  Not that I know of.
3 Q  Okay.  Do you know the Government has recommended
4 to the Court that the Court depart from the twenty
5 year minimum mandatory in this case and give you
6 credit for four years for your substantial assistance
7 to the Government, are you aware of that?
8 A  Yes, ma'am.
9 Q  And what would you like to say to the Court as to
10 why the Court should consider giving you more than the
11 four year credit recommended by the Government based
12 on what you've done for the Government to date?
13 A  Because I believe I did a lot for the Government.
14 I mean, I had a meeting with them like four times, the
15 information I supplied them was a lot of information.
16 A lot of helpful information.
17 Q  Does this information that you provided, does it
18 involve sources of drugs outside the state of Alabama?
19 A  Yes, ma'am.
20 Q  And are those people that you know directly?
21 A  Yes, ma'am.
22 Q  And are these people, do you know if any of them
23 have been charged and prosecuted yet?
24 A  I'm not for sure.
25 Q  Okay.  Have you been truthful and forthright in

Page 47

1 all your discussions?
2 A  Yes, ma'am.
3 Q  And are these people that you believe the
4 Government will be able to make cases on as a result
5 of your cooperation?
6 A  Yes, ma'am.
7 Q  And are these people, would you agree or disagree
8 that they're significantly involved in the drug trade
9 bringing drugs into our community?
10 A  I agree.
11       MS. JAMES:  I don't have anything further.
12       Do you have anything else you want to tell
13 the Court?
14 A  No.
15       MR. MINER:  Your Honor, I have some
16 additional facts that I'd like to put on the record,
17 but I don't disagree with what Mr. Moultry has stated
18 so I don't know if I need to do it through his
19 testimony or through cross examination.  I actually
20 agree with everything he said.
21       THE COURT:  Well, if you agree, that's fine.
22 So what do you want to do?
23       MR. MINER:  Your Honor, I do want to make
24 the Court aware, and I can do it through my agent or I
25 can do it through a proffer to this Court, that Mr.

Page 48

1 Moultry has provided assistance through meetings with
2 investigators.  That is absolutely true, and he's been
3 a very good source of information.  He's been
4 forthcoming.  I think it's to his credit and that is
5 the reason why the Government has moved for four years
6 off of his sentence, which is twenty percent of his
7 sentence at this point.
8       He has, however, not yet testified.  There
9 have not been any arrest based on his information, and
10 no case has been referred to my office based on that
11 cooperation.  So it's still preliminary.  Should he
12 testify, should it lead to other cases, Your Honor
13 knows once a case begins there are many opportunities
14 for testimony, that would be further cooperation.
15 And, you know, based on the cooperation, if it's
16 truthful and accurate, there could be then further
17 motions for substantial assistance.  And that's how
18 those instances of further cooperation should be dealt
19 with, through future motions.
20       I don't think he should receive any more
21 credit than four years based upon the fact he hasn't
22 yet testified.  I think in other cases, Your Honor,
23 we've seen where individuals have come in and
24 testified and they received roughly this amount of
25 time off of their sentence or even less.  I think

Page 49

1 there was a man last week who received thirty-five
2 months in a plea agreement that I think our office
3 dropped the ball and did not move for the reduction,
4 but I believe he testified against his father in a
5 methamphetamine trial.
6       In this instance Mr. Moultry has not yet
7 testified, and yet the Government has requested four
8 years reduction of his sentence.  I think that's
9 adequate.
10       MS. JAMES:  Your Honor, Mr. Moultry has
11 asked me if the Court would -- he would like for the
12 agents to tell the Court what he's done.
13       THE COURT:  If he wants me to, sure.
14       MR. MINER:  Your Honor, as to the fact these
15 are ongoing investigations, I would ask that either
16 the Court do this in-camera or that the record be
17 sealed simply because I don't like ongoing
18 investigations --
19       THE COURT:  Certainly.  Do you want me to do
20 it in-camera?
21       MR. MINER:  If the Court would like to do it
22 in-camera and ex parte, I would have no objection to
23 it.
24       THE COURT:  I don't see a need for it being
25 ex parte.  I think Mr. Moultry should hear whatever I

Page 50

1 hear.
2    MR. MINER: However Your Honor wants to
3 handle it.
4    THE COURT: Why don't we just empty the
5 courtroom for just a moment, then. This will only
6 take a moment.
7    (Whereupon, all spectators were escorted out
8 of the courtroom, and the following colloquy ensued):
9    MR. MINER: Would you like Agent Hubbard to
10 be on the stand?
11    THE COURT: Do you want him up there,
12 Miss James?
13    MS. JAMES: Sure. Oh, you mean on the
14 stand?
15    THE COURT: Yes.
16    MS. JAMES: No, he can do it from here,
17 Judge.
18    THE COURT: Has he been sworn?
19    MS. JAMES: No, sir.
20    L A R R Y   H U B B A R D,
21 the witness herein, having first been duly sworn or
22 affirmed to tell the truth, was examined and testified
23 as follows:
24    DIRECT EXAMINATION
25    BY MS. JAMES OF LARRY HUBBARD:

Page 51

1 Q State your name, please.
2 A Larry Hubbard.
3 Q How are you employed?
4 A Task force agent with the Drug Enforcement
5 Administration.
6 Q Are you from the Pike County area?
7 A No, ma'am.
8 Q Have you been involved in working with the
9 defendant, Adrian Moultry, in this case with regards
10 to assistance he's offered the Government in the
11 prosecution and arrest of others involved in the drug
12 trade?
13 A Yes, ma'am.
14 Q You've heard Mr. Moultry testify here today. Was
15 his testimony correct with regard to the number of
16 times he's met with you?
17 A It's at least four.
18 Q Okay. And have you determined Mr. Moultry's
19 information that he's provided you to be truthful and
20 forthright?
21 A Yes, ma'am.
22 Q He was asked in my questioning if he had provided
23 information regarding sources of drugs that were --
24 that these sources, being people outside of our area,
25 is that correct?

Page 52

1 A It could be, yes, ma'am. I'll say yes.
2 Q Okay. Are these people that Mr. Moultry has
3 provided information about, are they considered in
4 terms of the drug hierarchy, are they considered to be
5 people who are higher than your perception of him in
6 that drug hierarchy?
7 A A certain percentage of them, yes, ma'am.
8 Q Okay. Just give the Court, if you will, just
9 kind of an overview of what he's done. And I'm not as
10 concerned as names and compromising your
11 investigation, but just generally what he's done and
12 what use you've made of it and what you think you can
13 do with that information.
14 A Your Honor, the cases, it's actually two complex
15 conspiracy cases that I initiated approximately two
16 years ago. We have other assets in place. Mr.
17 Moultry was arrested, wanted to proffer, could offer
18 testimony against some of the key players that we're
19 looking at.
20    And I explained to Mr. Moultry that this was
21 not a quick thing, that it would take a while, and
22 that the bulk of his assistance would come from
23 testifying against these people. If I had any money
24 to do anything with for four months, so the case has
25 basically gone stagnant.

Page 53

1    He has been truthful. He's corroborated
2 information we already had. He's given some fresh
3 information, new information that I have been able to
4 ascertain was the truth. It will be an asset in case
5 we do go to trial in the future, but we haven't
6 reached that point yet.
7    That's basically it in a nutshell.
8    MS. JAMES: Judge, we don't have anything
9 additional to ask this agent.
10    THE COURT: Okay.
11    Anything else, Counsel?
12    MR. MINER: Yes, Your Honor. I just wanted
13 to ask a couple of questions.
14    THE COURT: All right. Go ahead.
15    CROSS EXAMINATION
16    BY MR. MINER OF LARRY HUBBARD:
17 Q Agent Hubbard, has Mr. Moultry testified in a
18 case yet?
19 A No, sir.
20 Q And that would include the full range of
21 testimony, whether trial, grand jury or at sentencing,
22 is that correct?
23 A That's correct.
24 Q And his information has not yet led to an arrest
25 in your case, is that right?

Page 54

1  A  No, sir.
2  Q  And you not referred a case to my office or the
3  U. S. Attorney's Office based on his information yet,
4  is that correct?
5  A  No, sir, I have not.
6       MR. MINER: Those are my only questions,
7  Your Honor.
8       MS. JAMES: Judge, may I have a couple of
9  follow-up questions?
10      THE COURT: Yes.
11          REDIRECT EXAMINATION
12      BY MS. JAMES OF LARRY HUBBARD:
13 Q  Agent, the fact that no arrests have been made or
14 referrals of cases to Mr. Miner, that's something
15 beyond Mr. Moultry's control, is it not?
16 A  That's right.
17 Q  And I just heard you say to the Court that you
18 all had apparently funding problems that has slowed
19 down these investigations?
20 A  Yes.
21 Q  Now let me assume for a minute that you do make
22 some of these cases, and these people plead guilty and
23 Mr. Moultry is not called upon to testify at either
24 the grand jury or the trial; it's possible that his
25 assistance still could have impacted on the ultimate

Page 55

1  result of those cases, is that true?
2  A  The way I understand it, Your Honor, when we do
3  make the arrest on these cases, and if they plead out
4  he would still get the assistance because he's there
5  and able to testify.
6       Is that what you're asking me?
7  Q  Okay, but you're saying, though, that that would
8  still be valued cooperation, whether he had to get on
9  the stand or not, correct?
10 A  The way I understand it.
11 Q  And there are cases where you have a scenario
12 like that where defendants don't actually have to
13 testify, they can just give you the information and
14 the cases are resolved without them sometimes ever
15 even surfacing as a cooperating defendant, is that
16 correct?
17 A  That's the way I understand it.
18      MS. JAMES: Judge, that's all I have.
19      THE COURT: Okay. Anything else, Counsel?
20      MR. MINER: Just a couple of questions.
21          RECROSS EXAMINATION
22      BY MR. MINER OF LARRY HUBBARD:
23 Q  Agent Hubbard, do you anticipate that in this
24 instance that Mr. Moultry will have to testify?
25 A  Yes.

Page 56

1  Q  And you would intend that his testimony will be
2  used in your future cases?
3  A  Correct.
4       MR. MINER: That's all, Your Honor.
5       THE COURT: Okay. Thank you very much.
6       (Whereupon the witness, Larry Hubbard,
7  stepped down from the stand.)
8       MS. JAMES: Judge, the only thing that I
9  would say, and I certainly don't want to foreclose
10 additional consideration by the Court that the
11 assistance he's provided is worth more than the
12 forty-eight months recommended by the Government, I
13 said initially I really didn't have anything to offer
14 on that, but in light of Mr. Moultry's testimony and
15 Mr. Hubbard's testimony, I do believe that the credit
16 should exceed the forty-eight months recommended by
17 the Government.
18      I believe that in part because this is a
19 case, I believe, that's different from many of the
20 cooperation cases the Court may see. We don't have a
21 string of codefendants here and one guy says well he's
22 going to plead guilty and testify against the other
23 and involve just one specific case. This is one where
24 Mr. Moultry is providing information about others
25 involved in drug activity in our community and

Page 57

1  apparently other communities. And I think that that
2  separates it and makes it more valuable than just a
3  guy who is going to agree to cooperate against
4  codefendants and then the dominoes fall and everybody
5  pleads guilty.
6       So I do believe it deserves more than
7  forty-eight months credit. I know the Government is
8  intimating here that if all of this works out and Mr.
9  Moultry is called upon to testify at either the grand
10 jury or at a trial, then he'll get credit for that
11 cooperation. And I have no reason to disbelieve that
12 Mr. Miner wouldn't follow through with that promise,
13 but there is a possibility that the cases might not be
14 made and that might not have the opportunity for
15 future credit but dependent on things that are beyond
16 his control.
17      In other words, if they get the money for
18 the funding, and if they make a good case, and if they
19 refer the case and if they refer the case and all of
20 those conditional matters that will be connected with
21 whether or not he receive credit down the road. And I
22 guess the Court could use as a frame of reference the
23 type of credit that you give people. In other words,
24 what you've heard here, Your Honor, and what you would
25 have you done in other cases in terms of value and the

Page 58

1 posture that the cooperation presently stands.
2      That would be all I have on that.
3      THE COURT: Anything else, Counsel?
4      MR. MINER: Simply that under Section
5 3553(e), which is the statute that provides the Court
6 with the authority to go below the mandatory minimum
7 sentence based upon the motion the Government has
8 provided, that statute advises the Court -- or that
9 the sentence shall be imposed in accordance with the
10 guidelines and policy statements issued by the
11 Sentencing Commission.
12     I'm looking to Section 5K1.1 of the
13 guidelines. There are a number you of factors that
14 are listed, including 5K1.1(a)(3), the nature and
15 extent of the defendant's assistance. He just hasn't
16 testified yet, Judge. Once he does, then I think at
17 that point he will be entitled to more. It just
18 hasn't happened yet.
19     MS. JAMES: Your Honor, may his family
20 return to the courtroom?
21     THE COURT: Yes.
22     (Whereupon, various spectators were escorted
23 into the courtroom.)
24     MR. MINER: And I would ask that Agent
25 Hubbard's testimony be sealed.

Page 59

1      THE COURT: It is sealed.
2      MR. MINER: Thank you, your Honor.
3      THE COURT: Anything else?
4      MR. MINER: Nothing from the Government.
5      THE COURT: Anything else, Ms. James?
6      MS. JAMES: No, sir, other than do I need to
7 make my record on -- well I say that, I think we
8 waived our right to appeal.
9      THE COURT: Well let me ask you this. Where
10 is the plea colloquy, may I see it?
11     MR. MINER: Yes, Your Honor.
12     THE COURT: Let me read it and I'll be with
13 you in just a second.
14     (Whereupon, the Court examined said
15 document.)
16     MS. JAMES: Judge, while you're doing that,
17 may we consult with the probation officer?
18     THE COURT: Yes.
19     (Whereupon, Ms. James and Probation Officer
20 Lancaster conferred off the record and out of the
21 hearing of the other courtroom participants.)
22     THE COURT: Anything else, Counsel?
23     MS. JAMES: Judge, we've run into a glitch.
24     THE COURT: Well I have some more questions
25 for you too, by the way, but I'll hear your glitch

Page 60

1 first.
2      MS. JAMES: Well, I say a "glitch," Mr.
3 Lancaster has just pointed out to us that I think
4 we've all been incorrect in what we've told the Court.
5 And maybe he should tell you.
6      THE COURT: Why doesn't he tell me.
7      THE PROBATION OFFICER: Judge, there is no
8 provision in 924(e) armed career that mandates a
9 sentence to run consecutive. Just for the 924(c). If
10 that's the case, and the Court has found career
11 offender doesn't apply, I mean I think you found that
12 career offender does not apply in this case --
13     THE COURT: You mean the guideline?
14     THE PROBATION OFFICER: Yes, sir.
15     THE COURT: Yes, we all you agree it doesn't
16 apply, yes.
17     THE PROBATION OFFICER: Then you go to the
18 enhancement of armed career criminal.
19     THE COURT: Right.
20     THE PROBATION OFFICER: And that mandates a
21 range of offense level of thirty-three.
22     THE COURT: Right.
23     THE PROBATION OFFICER: He gets three off
24 for acceptance, that gives him an offense level of
25 thirty. His criminal history will change. It will

Page 61

1 become four. And that's a guideline range of one
2 thirty-five to one sixty-eight. But since the
3 mandatory minimum was fifteen years, the guidelines
4 sentence is a hundred and eighty months. And you take
5 the forty-eight months from that.
6      THE COURT: From what, now?
7      THE PROBATION OFFICER: From the one hundred
8 and eighty months.
9      THE COURT: Rather than the two hundred and
10 forty?
11     THE PROBATION OFFICER: Yes, sir.
12     THE COURT: Because the armed career doesn't
13 carry a consecutive sentence?
14     THE PROBATION OFFICER: It does not. The
15 924(c) stands by itself, so it can't be grouped.
16     THE COURT: So the armed career statutory
17 offense carries a mandatory minimum of fifteen years?
18     THE PROBATION OFFICER: It does. The
19 guideline range will be a hundred and eighty months
20 because of that.
21     THE COURT: But it does not run consecutive?
22     THE PROBATION OFFICER: It does not run
23 consecutive. So the sentence would be, this is taking
24 one eighty, let's not even include the forty-eight
25 months yet --

Page 62

1    THE COURT: Right. So you're saying it
2  would be one hundred and eighty months minus four
3  years?
4        THE PROBATION OFFICER: I said let's not
5  even deal with that just yet. If we just took the one
6  eighty, the Court would proportion the sentence with
7  the six months from there, deciding one twenty on
8  counts one and two and counts sixty months on the
9  other to equal the one eighty.
10       THE COURT: Right.
11       THE PROBATION OFFICER: Now let's do one
12  eighty minus the forty-eight months which the
13  Government is recommending.
14       THE COURT: Did they say forty-eight or
15  forty?
16       THE PROBATION OFFICER: Forty-eight, if he
17  still wishes to make that recommendation.
18       THE COURT: Okay. One eighty minus forty
19  eight would be what?
20       THE PROBATION OFFICER: One hundred and
21  thirty-two months. The sentence imposed would be one
22  hundred and thirty-two minus sixty. So that would be
23  -- it will be sixty on one count and whatever you need
24  to make to get to the one thirty-two on the other
25  counts.

Page 63

1        THE COURT: So the net effect is a sentence
2  of a hundred and thirty-two months.
3        THE PROBATION OFFICER: Exactly, Judge.
4        THE COURT: Which is even less than what
5  you're asking for, Miss James.
6        I guess the question is does the Government
7  agree with that sentence?
8        MR. MINER: Well, Judge, this is sort of an
9  unusual --
10       THE COURT: Do you want to take a moment
11  while you think about it?
12       MR. MINER: I do, Your Honor, because I just
13  want to make sure that we're following the law on
14  this. If that's the law, then --
15       THE COURT: Why don't you take a moment and
16  think about it. If you all agree on the hundred and
17  thirty-two months, then I won't raise my issue.
18       We'll take a recess while you all try to
19  work that out.
20       (Whereupon, a recess was taken.)
21       THE COURT: Okay, Counsel. Where are we in
22  light of the representations made by Probation Officer
23  Lancaster before the last recess?
24       MR. MINER: Your Honor, if I could summarize
25  what I can't think --

Page 64

1        THE COURT: Well, let me ask you this. Mr.
2  Lancaster, do you still stick by your representation?
3        THE PROBATION OFFICER: Well, Judge, I guess
4  not. I've spoken with somebody in our office, and I'm
5  going to recant that. The career offender, it's
6  separate now. And I was traveling under that he was
7  still in there together. Because under the 2K2.4,
8  which is the 924(c) count, you use the range from the
9  manual. And since that's no longer there, then you
10  have you to stack them.
11       THE COURT: So what are you telling me?
12  Where are we now?
13       THE PROBATION OFFICER: We're at two forty.
14       THE COURT: You're at two forty again?
15       THE PROBATION OFFICER: Yes, sir.
16       THE COURT: Okay. So can we put that
17  argument to rest, or does anyone want to pursue that
18  any further?
19       MS. JAMES: No, sir.
20       THE COURT: Okay. Then we're back to where
21  we started before Mr. Lancaster the other suggestion.
22       And I had asked to see a copy of the plea,
23  change of plea transcript?
24       MR. MINER: Yes, Your Honor.
25       THE COURT: And I just have a couple of

Page 65

1  questions for both of you.
2        Where, during the change of plea, does the
3  defendant agree that he specifically is pleading to a
4  924(e)?
5        MR. MINER: Your Honor, I'm not sure if
6  Section 924(e) was expressly referenced.
7        THE COURT: Whether it's expressly
8  referenced or not, just show me -- and here is the
9  transcript -- where he pled to anything other than
10  922(g).
11       MR. MINER: Yes, Your Honor.
12       THE COURT: And I'll let you take a moment
13  and review the transcript before you speak.
14       MS. JAMES: Judge, I was going to make note
15  that I have not read this.
16       THE COURT: I think you need to read it. So
17  read it first and then I'll hear from you.
18       MS. JAMES: I wasn't present, another lawyer
19  stood in for me.
20       THE COURT: Oh, another lawyer stood in for
21  you?
22       MS. JAMES: Yes, sir.
23       THE COURT: Okay.
24       (Whereupon, both counsel examined said
25  document.)

Page 66

1    MR. MINER: Your Honor, I would like to
2 point out that the penalty is referenced on page two
3 of the plea agreement.
4        THE COURT: Right, but they say that that is
5 the maximum penalty.
6        MR. MINER: Oh no, count two it states that
7 a sentence of not less than fifteen years is
8 referenced as to count two which --
9        THE COURT: Which is the maximum penalty.
10       MR. MINER: No, the minimum sentence, Your
11 Honor.
12       THE COURT: No, it depends on how you phrase
13 it.
14       MR. MINER: A sentence of not less than
15 fifteen years nor more than life.
16       THE COURT: How does she say it?
17       MR. MINER: Well, Your Honor, I'll look at
18 what the judge said. I'm looking at the plea
19 agreement, the actual --
20       THE COURT: No, I'm asking what's in the
21 colloquy with the judge.
22       (Whereupon, Ms. James and Mr. Miner examined
23 said transcript.)
24       MR. MINER: Your Honor, I believe we found
25 this at page thirteen of the plea colloquy.

Page 67

1        THE COURT: Okay.
2        MR. MINER: Regarding the second count,
3 which is the felon in possession count that triggers
4 the 924(e) enhancement, Judge McPherson states --
5        THE COURT: Is it Judge McPherson or Judge
6 Boyd?
7        MR. MINER: I thought it was Judge McPherson
8 who did it. No, it is Judge Boyd. I was looking at a
9 different case. I'm sorry, Judge.
10       THE COURT: Just read to me what she ways.
11       MR. MINER: Yes. "The second count charges
12 you with possession of a firearm as a convicted felon.
13 That's a violation of 18 U. S. C., Section 922(g)(1).
14 Here's the maximum punishment that goes with that.
15 Not less than fifteen years in prison nor more than
16 life."
17       THE COURT: That is the maximum. That's not
18 the minimum.
19       MR. MINER: But she says "not less than
20 fifteen years."
21       THE COURT: That's the maximum penalty is he
22 could, as a maximum penalty, receive a minimum
23 sentence of not less than fifteen years. She would
24 have to tell him that. In other words, he's looking
25 at a potential maximum sentence of, what is it, life

Page 68

1 or not less than fifteen years or a minimum sentence
2 of whatever. I mean, she'd have to tell him that.
3 That's potentially what's at risk under (e).
4        But go ahead. I'm trying to see where in
5 the plea agreement does he essentially say that he's
6 pleading to an armed career, what is it, three
7 convictions.
8        MR. MINER: He was never specifically asked
9 sir, are you an armed career criminal, but --
10       THE COURT: Is that the only thing you're
11 hanging it on, is that she said the maximum penalty is
12 life or a minimum sentence of fifteen years?
13       MR. MINER: He was expressly advised that a
14 sentence no less than fifteen years --
15       THE COURT: That's not what she said. Read
16 the whole sentence. The whole sentence is that his
17 maximum, isn't that what she says?
18       MR. MINER: Your Honor, let me read what she
19 says.
20       THE COURT: Okay. Go ahead.
21       MR. MINER: "The second count charges you
22 with possession of a firearm as a convicted felon.
23 That's a violation of 18 U. S. C., Section 922(g)(1).
24       THE COURT: Right.
25       MR. MINER: "Here's the maximum punishment

Page 69

1 that goes with that. Not less than fifteen years in
2 prison nor more than life."
3        THE COURT: Right.
4        MR. MINER: "That is between fifteen and
5 life is the prison term. A fine of not more than two
6 hundred and fifty thousand dollars or both the fine
7 and the prison term. The supervised release is not
8 more than five years.
9        "Mr. Miner, is that punishment correctly
10 stated for 922(g)(1)? Is it enhanced because of count
11 one, is that the reason it differs from the penalty
12 stated for Mr. Spurlock with the same violation?"
13 That's a different case that day."
14       Mr. Miner, I respond, "It's actually
15 enhanced because of his criminal history report."
16       The Court says, "I see. That's fine. I
17 just want to make sure it's stated accurately."
18       So that's as to the fifteen year enhancement
19 provision --
20       THE COURT: I guess what I'm asking, though,
21 is, is he pleading, though, to 924(e)?
22       MR. MINER: The sentencing enhancement.
23       THE COURT: Yes. Is that actually what he's
24 pleading to? And the reason I'm raising that is, the
25 Eleventh Circuit in a case has essentially said that

Page 70

1 that's a sentencing provision, not an element of a
2 crime.
3       MR. MINER: That is correct.
4       THE COURT: And, therefore, you don't plead
5 to that.
6       MR. MINER: Well that is correct, Your
7 Honor.
8       THE COURT: So if he didn't plead to it,
9 then he's not bound by what happened at the plea
10 hearing today. Which means I still have to make
11 findings as to whether he is an armed career criminal
12 under 924(e). Have you read the Sweeting case?
13      MR. MINER: I have looked at the Sweeting
14 case, Your Honor. I thought that Miss James was
15 stipulating that --
16      THE COURT: I thought she was, too. I just
17 wanted to make sure. I'm concerned because she said
18 she didn't even read the plea colloquy, and yet she
19 stipulated that that's what he pled to. But in
20 Sweeting, the Court expressly states that, "Because
21 924(e)(1) does not create a separate offense but is
22 merely a sentence enhancement provision, the previous
23 felony convictions necessary for sentencing under
24 924(e)(1) are not an element of the offense for which
25 the defendant was tried."

Page 71

1       And therefore the Court, even though he had
2 stipulated to it at trial, said that the trial court
3 could not use it or should not use it for sentencing
4 purposes. So in other words the defendant had
5 stipulated to three prior felony convictions as an
6 armed career offender, but the Eleventh Circuit
7 reversed the trial court and said that stipulation did
8 not apply to sentencing because it is a sentencing
9 provision, not a conviction provision.
10      MS. JAMES: Your Honor, I was not at the
11 change of plea and I was operating -- When we started
12 here last week, I was operating on the representations
13 made by Mr. Miner because he was there and I had no
14 reason to not believe the representations that he made
15 because I think he fully believed that we were put on
16 notice of the enhanced punishment and clearly we were
17 put on notice of the enhanced punishment.
18      But as I understand what the Court is saying
19 now is that yeah, you're saying that I have said yes,
20 we had three prior qualifying felonies for the armed
21 career offender application.
22      THE COURT: And the Court there said that
23 the attorney in entering the stipulation, the defense
24 counsel, was in error, and that that was a mistake of
25 law which would not bind the trial of court of error

Page 72

1 at the point of sentencing, even though at the time of
2 trial they may have entered that stipulation, which to
3 me would be comparable to entering that stipulation at
4 the time of --
5       MS. JAMES: Well may I make this inquiry,
6 Your Honor?
7       THE COURT: Well let me ask you this. Have
8 you read Sweeting?
9       MS. JAMES: No, sir.
10      THE COURT: Why don't you read the case
11 first in light of what I just told you.
12      MS. JAMES: May I make an inquiry?
13      THE COURT: Yes.
14      MS. JAMES: When we left the other day, I
15 had objected to the armed career offender and I had
16 objected to the career offender. And as I understood
17 the provisions, it was easier for the Court to make
18 the finding of three prior qualifying felonies for
19 purposes of armed career offender. In other words,
20 they weren't mutually exclusive.
21      THE COURT: Well the Government has conceded
22 that, so that's out of the picture. We're only
23 focusing on armed career criminal.
24      MS. JAMES: Right. And I'm saying in my
25 decision today, my agreement today was based on the

Page 73

1 fact that I thought we would be in a better position
2 by the tact that I took if the Court made an
3 independent finding that there were in fact three
4 qualifying prior felonies for purposes of armed career
5 offender.
6       THE COURT: You are better off up under the
7 armed career criminal rather than you are under the
8 armed career. No question about it.
9       MS. JAMES: Right. And that was the basis
10 of my second --
11      THE COURT: You know, we don't have to
12 pursue this unless you want to. Your strategy does
13 trump other things. In fact, that's why I waited
14 until the end of this proceeding to even raise this.
15 If no one wants to pursue this, then that's your
16 strategy. Strategy is something that is what is used
17 all at time.
18      MS. JAMES: Because I got the concession,
19 Your Honor, from the Government, I didn't have to
20 fight over the career offender. You see what I mean?
21      THE COURT: Right, you don't fight over the
22 career offender so you then travel under the armed.
23 If that's it, then that's addressed now.
24      MS. JAMES: That was it, but I would like to
25 look at the case.

Page 74

1 THE COURT: Okay.
2 (Whereupon, Ms. James examined said
3 document.)
4 THE COURT: Counsel, I have a judges meeting
5 in ten minutes, so we only have five minutes before I
6 have to get ready to go to it. I think we'll have to
7 come back at one o'clock.
8 MR. MINER: Yes, Your Honor.
9 THE COURT: Okay. I'll see you back here at
10 one.
11 (Whereupon, the luncheon recess was taken.)
12 THE COURT: Okay. Where are we, Counsel?
13 MS. JAMES: Judge, at the break you wanted
14 me to look at the Sweeting case.
15 THE COURT: Right.
16 MS. JAMES: I have read that case, but it's
17 been a while back when I was dealing with the Pope
18 matter but I did not remember what was in the case.
19 I've read Pope, I've read Sweeting and I have read
20 Lee. And I understand the Court's concern with regard
21 to. The plea and the reference I guess made by Mr.
22 Miner the other day that we had in essence by pleading
23 guilty agreed to the three prior convictions. And as
24 I read this case it says that that's not binding, even
25 if we did do that at the time of the change of plea,

Page 75

1 that we would still be free to argue for purposes of
2 the armed career offender sentencing enhancement that
3 we did not have the three prior convictions.
4 I do understand that, and even given that
5 holding, our position remains the same, and that is
6 that in reading the Pope case, which was I guess Pope
7 and Sweeting were kind of culminated in a 2000 case,
8 U. S. vs. Lee. And in that case the Court held that,
9 "We reject both of the contentions. The rules stated
10 in Pope comports with the result in Sweeting which was
11 reached without extended discussion."
12 THE COURT: This is Lee?
13 MS. JAMES: Yes, sir, this is Lee.
14 And basically --
15 THE COURT: Let me find the case here first.
16 MS. JAMES: Okay.
17 THE COURT: Okay. Go ahead. U. S. vs. Lee,
18 it's 208 F.3d 1306?
19 MS. JAMES: Yes, sir.
20 THE COURT: And what does that case say?
21 MS. JAMES: Well it basically says that they
22 were trying to I guess draw a distinction between the
23 two holdings. In other words, Sweeting apparently
24 held that the two, I guess it was a burglary or two
25 burglaries, were in fact one criminal episode where

Page 76

1 Pope ruled contrary to that. And the Lee court seemed
2 to say that there was not an inconsistency between
3 Sweeting and Pope because it said that Pope held so
4 long as predicate crimes were successive rather than
5 simultaneous, they constitute separate criminal
6 episodes for purposes of the A. C. C. A.
7 THE COURT: Right. I wasn't bringing up you
8 the Sweeting case for that reason.
9 MS. JAMES: Well I'm just giving you why I
10 did it just so you know my strategy.
11 THE COURT: Oh, okay. This just explains
12 sewer strategy.
13 MS. JAMES: Yes, sir.
14 THE COURT: Because the bottom line is I'm
15 going to let you explain your strategy, you don't want
16 to change what you said earlier.
17 MS. JAMES: No, sir.
18 THE COURT: Okay.
19 MS. JAMES: Just so the record is clear in
20 case the matter comes back up --
21 THE COURT: I agree it should be put on the
22 record.
23 MS. JAMES: I wanted to explain why I did
24 this. In other words, having been familiar with the
25 Pope case, I made this argument in the District Court.

Page 77

1 I didn't represent him at his sentencing, but I
2 represent him on his twenty-two fifty-five. And I
3 made the argument that, you know, these were, it was
4 one common episode really, because in Pope there were
5 two burglaries of two medical offices less than fifty
6 feet apart, and they ran -- were actually seen running
7 from one of the offices to the other and left some of
8 the goods that they stole, you know, in both places.
9 I mean it's clearly -- I had a much stronger
10 argument, Your Honor, in that case than in this case
11 given the fact that this was over a two day period.
12 Because what they essentially held in the Pope case
13 was that -- specifically that he had an opportunity, I
14 believe they said in Pope and in this case it would
15 follow, to desist from the criminal conduct. In other
16 words, there was a time that they could have stopped
17 and said we're not going to go further, we're not
18 going to go rob any more trailers, we're not going
19 back tomorrow and that kind of thing.
20 I think the Pope facts were better than my
21 facts in this case. And so in terms of the strategy
22 decision that I made, I'm satisfied that I could have
23 argued that the three prior convictions that were used
24 for purposes of the defendant's plea were not binding
25 on the Court, nor did that preclude our argument that

Page 78

1 we could have contested those. However, I believe
2 that the Court, given the Pope case, the Lee case and
3 the Sweeting case, I believe that the Court would have
4 ruled against me on that matter. And then I would
5 have had the armed career offender application.
6        I think I had a -- There was a close call
7 with regard to the career offender provision. So in
8 discussing it with Mr. Miner this morning, I in
9 essence agreed that we -- that I would concede the
10 armed career offender in exchange for his support,
11 whether it was knowing support or not, that my facts
12 favored Mr. Moultry's relatedness argument on the
13 career offender. And clearly we were in a better
14 position by doing that, because with the armed career
15 offender we ended up as a starting point of two
16 hundred and forty months. If we had application of
17 the career offender, our starting point would have
18 been two hundred and sixty-two months.
19        THE COURT: Okay. Well, then to repeat
20 again what we said at the beginning of this, in light
21 of what you've just said the parties agree that 4B1.4
22 and Section 294(b) apply to this case, the parties
23 further agree that 4B1.1 does not apply to this case.
24 The parties agree that the minimum sentence as a
25 result is two hundred and forty months. The parties

Page 79

1 further agree the Government's motion for a downward
2 departure should be you granted.
3        And this is where the parties disagree: The
4 Government contends that the Court should reduce the
5 minimum sentence by four years. The defendant
6 contends that the Court has leeway to impose any
7 sentence it wants and consider essentially the
8 application of 3553(e) and all of its factors afresh
9 and anew. And the defendant further contends that the
10 Aponte case found at 36 F.3d 1050 has been modified in
11 light of Booker.
12        MS. JAMES: Yes, Your Honor.
13        THE COURT: Those are the defendant's
14 contentions.
15        MS. JAMES: With one you additional one, and
16 that is that we believe that the testimony we heard
17 today from Agent Hubbard and Mr. Moultry support a
18 guideline -- I mean a departure more than the
19 forty-eight months suggested by the Government.
20        THE COURT: Right. So you really had two
21 arguments.
22        MS. JAMES: Right.
23        THE COURT: Now, have I correctly summarized
24 the agreements and the contention?
25        MR. MINER: I believe that's right, Your

Page 80

1 Honor. Either I misheard or you misspoke, but I
2 thought I heard you say 249(e) would be section
3 924(3).
4        THE COURT: You're right. The parties agree
5 that 4B1.4 and 924(e) apply in this case. I think I
6 did say 294(e), I meant to say 924.
7        MS. JAMES: And, Judge, with regard to my
8 contention on behalf of Mr. Moultry that the Court was
9 free to impose any sentence it wanted, I was
10 specifically relying on Title 18 you U. S. C. 3553(a)
11 and 3553(a)(2).
12        THE COURT: Right. Okay.
13        The first thing I will do is rule on the
14 defendant's contention that I have the freedom to
15 apply 3553(a) -- and what was the other subdivision?
16        MS. JAMES: And (a )(2).
17        THE COURT: And (a)(2). Okay. That
18 contention is overruled. The Court is of the opinion
19 that Aponte still applies, and that a motion for a
20 downward sentence based on cooperation, the Court is
21 limited to the basis of the motion itself, which is
22 whether the defendant has cooperated. And if so the
23 extent.
24        Now I'll hear you with regard to your last
25 contension, the only remaining contention in this case

Page 81

1 now, which is should I depart downward four months --
2 I mean four years or more based on the defendant's
3 cooperation.
4        MS. JAMES: Judge, I don't know, we've had a
5 break or two here, but I had articulated my position
6 on that behalf we broke. Do you want to hear it
7 again?
8        THE COURT: No, I think I've heard it. I
9 just want to make sure the Government has nothing to
10 add to it.
11        MR. MINER: I have nothing more to add to
12 it, other than what I've already said.
13        THE COURT: Does Probation have anything to
14 say as to whether the Court should accept the
15 Government's or the defendant's contention as to
16 whether four years or more should be awarded?
17        THE PROBATION OFFICER: Nothing to add,
18 Judge.
19        THE COURT: Okay. Okay. I will now
20 announce the proposed sentence. So the -- for Mr.
21 Moultry, the offense level is what, now, then?
22        THE PROBATION OFFICER: The offense level
23 would be thirty.
24        THE COURT: Thirty?
25        THE PROBATION OFFICER: Yes, sir.

Page 82

1 THE COURT: And the criminal history
2 category is what?
3 THE PROBATION OFFICER: Four.
4 THE COURT: And the guideline range is what,
5 then?
6 THE PROBATION OFFICER: One eighty to one
7 eighty-eight.
8 THE COURT: And the supervised release
9 period is what?
10 THE PROBATION OFFICER: Still three to five.
11 THE COURT: The fine range is from?
12 THE PROBATION OFFICER: Fifteen thousand to
13 two million.
14 THE COURT: Okay. But he is also facing a
15 mandatory minimum of --
16 THE PROBATION OFFICER: Sixty months. We're
17 going to tack that on when the Court enters the final
18 sentence.
19 THE COURT: That's right. It's fifteen
20 years is how many months?
21 MS. JAMES: A hundred and eighty.
22 THE COURT: A hundred and eighty months?
23 THE PROBATION OFFICER: Yes, sir.
24 THE COURT: Okay. Well I agree with the
25 Government that it should be four years for his

Page 83

1 cooperation. That doesn't mean he can't cooperate
2 some more. So that means that his sentence, then, is
3 what?
4 THE PROBATION OFFICER: It would be one
5 ninety-two, Judge, total sentence.
6 THE COURT: And the term consists of how
7 many months on count one?
8 THE PROBATION OFFICER: It will be one
9 hundred eighty months on count one --
10 THE COURT: No, a hundred and thirty-two
11 months -- oh, that's right, a hundred and eighty
12 months on count one?
13 THE PROBATION OFFICER: Yes, sir.
14 THE COURT: And how many months on count
15 two?
16 THE PROBATION OFFICER: A hundred and eighty
17 months on count two.
18 THE COURT: And how many on count three?
19 THE PROBATION OFFICER: And sixty months on
20 count three to be served consecutive.
21 THE COURT: That's more than a hundred and
22 ninety-two months.
23 THE PROBATION OFFICER: Yes, sir. The two
24 forty minus the -- no, I'm sorry. The one eighty plus
25 the sixty is two --

Page 84

1 THE COURT: They come down four years on
2 either counts one, two or three. I need to deduct the
3 four you years from one of those.
4 MR. MINER: Judge, I believe you were
5 correct when you said a hundred and thirty-two months
6 on counts one and two, and then sixty months would be
7 on count three, and that would total one hundred and
8 ninety-two months after the reduction you.
9 THE COURT: Right. And the hundred and
10 thirty-two reflects the four year reduction.
11 THE PROBATION OFFICER: That's right.
12 THE COURT: Anything else, Counsel?
13 (Whereupon, there was no response.)
14 THE COURT:
15 I will now announce the proposed sentence.
16 I will give you another opportunity to make comments
17 before I decide whether to impose the sentence as
18 announced.
19 Having made findings as to the objections by
20 the parties, the Court finds that the offense level is
21 thirty, the criminal history category is four.
22 Pursuant to section 4B1.1(c)(3), or should that be
23 (4)?
24 THE PROBATION OFFICER: Were all (3)
25 criminal.

Page 85

1 THE COURT: You have 4B11.1 in there.
2 THE PROBATION OFFICER: I'm sorry, Judge.
3 It would be 4B1.4, for that.
4 THE COURT: Right. Pursuant to Section
5 4B1.4, the guideline range is from one hundred and
6 eighty to one hundred and eighty-eight months. The
7 supervised release period is from three to five years
8 and the fine range is from fifteen thousand to two
9 million dollars. The Court further finds that the
10 Government's motion for downward departure pursuant
11 you to 5K1.1 based on the defendant's substantial
12 assistance should be and is granted.
13 The Court finds the defendant's total
14 sentence should be reduced by four years.
15 Accordingly, the Court, having considered the
16 sentencing guidelines as advisory, and in particular
17 the guideline range as advisory and applying the
18 factors in 3553(a), it is the order, judgment and
19 decree of the Court that the defendant is committed to
20 the custody of the Federal Bureau of Prisons to be
21 imprisoned for a total term of one hundred and
22 ninety-two months.
23 This term consists of one hundred and
24 thirty-two months on count one, one hundred and
25 thirty-two months on count two, to be served

Page 86

1 concurrently, and sixty months on count three to be
2 served consecutively to counts one and two.
3       The defendant shall pay to the United States
4 District Court Clerk a special assessment fee of three
5 hundred dollars which is due immediately.
6 Furthermore, because of his inability to pay, the
7 Court waives the imposition of a fine.
8       It is further ordered that upon release from
9 imprisonment the defendant shall be placed on
10 supervised release for a term of five years. The term
11 consists of five years on count one, three years on
12 count two and three years on count three, all such
13 terms to run currently.
14       Within seventy-two hours of release from
15 custody the defendant shall report to the probation
16 office in the district to which he is released. It is
17 further ordered that while on supervised release the
18 defendant shall comply with the mandatory and standard
19 cans of supervised release on file with the Court.
20       The Court also orders the following special
21 conditions. The defendant shall submit to a search of
22 his person, residence, office and vehicle pursuant to
23 the search policy of the Court.
24       The Court finds there is no identifiable
25 victim who incurred a financial loss as a result of

Page 87

1 this offense.
2       Now I ask you at this time, Mr. Moultry, are
3 there any objections to the sentence imposed or to the
4 manner in which the Court pronounced it, other than
5 these objections previously stated for the record?
6 For example, do you have any objection to the Court's
7 ultimate findings of fact or conclusion of law?
8 Furthermore, you are instructed that if you have you
9 an objection, you must not only state the objection,
10 you must give the grounds for the objection.
11       MS. JAMES: Judge, I think I have made a
12 sufficient record with regard to the Court's findings
13 with the exception of one thing. And that is my
14 request that the Court sentence anew with regard on
15 the cooperation motion filed by the Government, and my
16 request that the Court consider Title 18 United States
17 Code, Section 3553(a) and 35553(a)(2). I would ask if
18 the Court would make a finding as to whether or not if
19 the Court weren't constrained by its interpretation of
20 the Aponte case, if the Court would be inclined to
21 give a lesser sentence.
22       THE COURT: You read that sentence last week
23 out of the Eleventh Circuit. You know what I'm
24 talking about?
25       MS. JAMES: Right.

Page 88

1       THE COURT: Yes. I think you're entitled to
2 that finding.
3       MS. JAMES: Mr. Carnes -- Judge Carnes --
4       THE COURT: Right. Unless you can show
5 error, it would be harmless because you couldn't show
6 what I would have done. I'll have to think about it
7 first for a second.
8       MS. JAMES: Okay.
9       There is one other matter, Judge. This is a
10 bit complicated. I just ran into this probably with a
11 fellow that was sentenced in California. Mr. Moultry,
12 as I understand it, is presently here on a writ from
13 state custody. He was in the custody of the Pike
14 County authorities for a probation revocation as a
15 result of this arrest. In fact, he was in that jail
16 when I first met him. He was there for a good bit of
17 time and then he was transferred here.
18       What could happen -- Your sentence is
19 imposed first, and assuming that we go back to Pike
20 County and they give him any sort of custody sentence,
21 he would necessarily go to state custody and serve
22 that sentence before he came into federal custody.
23 And the Bureau of Prisons would deem that time, even
24 if the state court judge down there says I'm going to
25 run it concurrently, it doesn't happen automatically.

Page 89

1       And so what I have experienced in this other
2 case that I was involved with is you, as a federal
3 judge, can designate any type of facility as
4 satisfactory for service of his federal sentence. I
5 mean it has to meet certain criteria, but assuming if
6 he were in the Alabama Department of Corrections, what
7 I need the Court to do at this point in time in the
8 event that I have a problem, because it's not certain
9 that he'll get time, there but if he does, you know he
10 could get let's say ten years down there in state
11 custody for four or five years, and it would be your
12 intent that the case at that time could run concurrent
13 with the state case.
14       If you would you indicate that at this point
15 in time, then if he does get time there, in other
16 words you can't run -- your sentence concurrent with
17 the state sentence that hasn't happened, Judge.
18 That's where the glitch comes in. Even if it were
19 your intent that I don't have a problem with that. At
20 least if you would you articulate that you wouldn't
21 have a problem imposing the sentence concurrent with a
22 state sentence that he was serving --
23       THE COURT: Are you asking me to recommend
24 to the state judge that his sentence be?
25       MS. JAMES: No, sir. I'm just asking you to

Page 90

1  say for the record that if there were a state
2  sentence, and I'm telling you he was on probation for
3  the burglaries that have been the subject of a lot of
4  debate here, and it is possible because of this case
5  that he's going to be revoked by the State of Alabama.
6  And it's not going to mean much if they revoke him and
7  don't give him any additional time. But if they send
8  him to state prison, then even if it is your intent
9  without you're saying it he will not get credit on the
10 federal sentence for the time that he serves in the
11 state.
12        My request to you, and it just saves the
13 housekeeping of me having to come back to you should
14 you that happen, is to say that --
15        THE COURT: I don't think you could you come
16 back. I think I would have lost jurisdiction.
17        MS. JAMES: Well I can't come back -- Here's
18 what the Bureau of Prisons does. They're required,
19 there's a Third Circuit case --
20        THE COURT: Let me make a strong suggestion
21 to you.
22        MS. JAMES: Okay.
23        THE COURT: I think this came up in another
24 case we had where someone was going to be sentenced
25 potentially in another case, state case, and the

Page 91

1  question was could I run my case concurrent with the
2  sentence that had not yet come down.
3        MR. MINER: I believe that the statute reads
4  there has to be a predicate sentence for you to run
5  yours.
6        THE COURT: I'm not sure of that. I've
7  forgotten how we came out on that. But I pretty well
8  remember that Ms. Freeman was involved, and I don't
9  know who the U. S. attorney was and I would strongly
10 suggest that you call them and find out what we did,
11 rather than trying to do this research anew.
12        MS. JAMES: Judge, and I have no problem
13 with that, but I do know from my other experience that
14 the Bureau of Prisons, when this situation occurs,
15 then they have a --
16        THE COURT: Why don't you call Ms. Freeman
17 and ask her what they did in the other case before we
18 go down this path.
19        MS. JAMES: Okay. Then how should I revisit
20 the matter?
21        THE COURT: Well first let me think about
22 your first concern.
23        How much property was stolen in the
24 burglaries?
25        THE PROBATION OFFICER: Judge, it was ten of

Page 92

1  them, and there is no way I could give you a total
2  dollar figure or anything. But you the matter he was
3  being held on in Pike County, that revocation has
4  since been nolle prossed. So I'm not even sure if
5  they do take him back to Pike County, it's just to do
6  it because he's technically through with that case.
7        MS. JAMES: Judge, I was not aware of that
8  because he was asking me about that today. So if
9  that's the case, it may be a moot point.
10        THE PROBATION OFFICER: It may be. I'm not
11 sure if he has other things, but you that's been nolle
12 prossed.
13        THE COURT: The Government also filed a
14 motion for a one level reduction for acceptance of
15 responsibility in this case. How does that play out
16 you here?
17        MR. MINER: Your Honor, I'm not sure exactly
18 how that plays out with --
19        THE COURT: Mandatory minimum?
20        MR. MINER: Exactly. That was filed in
21 light of the career offender guideline and the fact
22 that he would need three levels off to get to the two
23 hundred and sixty-two months that the Government had
24 agreed to recommend at sentencing.
25        THE COURT: Okay. Do you still want to

Page 93

1  pursue you this motion?
2        MR. MINER: It would have absolutely no
3  effect, Your Honor. I did agree to file it and it has
4  been filed accordingly.
5        THE COURT: Well it's granted. But it has
6  no effect, you're right.
7        MS. JAMES: Judge, based on the Aponte case,
8  you can't do that.
9        THE COURT: I did that before. That gets us
10 you down to two forty.
11        MS. JAMES: Okay.
12        THE COURT: I'm not granting it as a part of
13 the motion for downward departure and acceptance, I'm
14 granting it before I even get to that. But it ends up
15 being a moot issue because there is a mandatory
16 minimum.
17        MR. MINER: Your Honor, as another
18 housekeeping matter, and I don't know if this is the
19 proper time, but I believe that the forfeiture
20 attorney in my office --
21        THE COURT: Right, I have that right here
22 and I'll get to that in a minute.
23        MR. MINER: Yes, Your Honor.
24        THE COURT: Miss James, if I could apply the
25 factors in 3553(a) in granting the Government's motion

Page 94

1 for downward departure, I would grant a sentence lower
2 than -- I would grant a sentence lower than one
3 hundred and ninety-two months.
4        MS. JAMES: Thank, Your Honor.
5        THE COURT: I would seriously haven't gotten
6 below the mandatory minimum consider that the
7 burglaries were clearly a spree. I think that the
8 application of the armed career is probably a little
9 overstated here, and I think that I would give him a
10 sentence of ten years. Which would be how many
11 months?
12        MS. JAMES: A hundred and twenty.
13        THE COURT: I would probably give him a
14 sentence, in fact I would give him a sentence of a
15 hundred and twenty months.
16        MS. JAMES: Thank you.
17        THE COURT: I think you're entitled to that
18 finding, especially in light of that case that says
19 without that finding you could not show prejudice.
20        MS. JAMES: Yes, sir, thank you.
21        THE COURT: I don't know if I told you this.
22 For example, do you have any objection to the Court's
23 ultimate you findings of fact or conclusions of law?
24 Furthermore, you are instructed that you if you have
25 an objection you must not only state the objection you

Page 95

1 must give the grounds you for the objection. Do you
2 have anything else to add?
3        MS. JAMES: No, sir.
4        THE COURT: Do you have anything to say as
5 to why the sentence as announced should not be
6 imposed, or do you have anything to say in mitigation
7 of the sentence?
8        MS. JAMES: No, sir.
9        THE COURT: It is the order, judgment and
10 decree of the Court that the sentence as announced is
11 hereby imposed.
12        Now I know you've waived your right to
13 appeal, but obviously that's always a debatable
14 question in a case like this that's so complicated.
15 To the extent that you still have a right to appeal,
16 you have ten days to file any notice of appeal. If
17 you can not afford the cost of an appeal, the
18 Court will allow you to appeal at no cost, including
19 furnishing you with a free transcript and a free
20 attorney.
21        Do you have any objections to the Court
22 entering a final order of forfeiture?
23        MS. JAMES: No, sir.
24        THE COURT: That order will be entered
25 requiring the forfeiture of one Rice Arms model

Page 96

1 Jennings, nine millimeter semiautomatic pistol, serial
2 number one four nine seven eight four four.
3        THE PROBATION OFFICER: Excuse me, Judge.
4 Just for the record, I told you a criminal history
5 category of four.
6        THE COURT: Yes.
7        THE PROBATION OFFICER: I misspoke, it
8 should be a five. The guideline range would remain
9 the same.
10        THE COURT: Okay. The sentence is amended
11 to reflect that the criminal history category is five
12 rather than four. Any objections, Ms. James?
13        MS. JAMES: No, sir.
14        THE COURT: Any objections?
15        MR. MINER: Not from the Government.
16        THE COURT: Anything else, Counsel?
17        MS. JAMES: No, sir.
18        MR. MINER: No, Your Honor.
19        THE COURT: Very good. Thank you.
20        MR. MINER: Thank you, Judge.
21        (Whereupon, the proceedings were
22 concluded.)
23
24        * * * * * * * * * *
25

Page 97

1
2                COURT REPORTER'S CERTIFICATE
3
4        I certify that the foregoing is a correct
5 transcript from the record of proceedings in the
6 above-entitled matter as prepared by me to the best of
7 my ability.
8
9        I further certify that I am not related to
10 any of the parties hereto, nor their counsel, and I
11 have no interest in the outcome of said cause.
12
13        Dated this 23rd day of March 2006.
14
15
16        MITCHELL  P.  REISNER,  CM, CRR,
         Official US Dist. Court Reporter
         Registered Professional Reporter
17        Certified   Real-Time   Reporter
18
19
20
21
22
23
24
25